THE STATE, EX REL. THOMPSON, APPELLANT, *v.* FENIX & SCISSON, INC.;
INDUSTRIAL COMMISSION, OF OHIO, APPELLEE.

[Cite as State, ex rel. Thompson, *v.* Fenix & Scisson, Inc.
(1985), 19 Ohio St. 3d 76.]

(No. 84-806—Decided August 9, 1985.)

*Michael J. Muldoon,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Marcia J. Harris,* for appellee.

CLIFFORD F. BROWN, J. Appellant urges that the commission's order denying him permanent total disability benefits constitutes an abuse of discretion as it is unsupported by the evidence. We agree.

This court has repeatedly held that where there is no evidence upon which the commission could have based its factual conclusion, an abuse of discretion exists and mandamus becomes appropriate. See, *e.g., State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55, 58-59. Because the evidence before the commission in the instant cause, upon which the commission relied to reach its erroneous decision, consisted entirely of medical reports which are legally deficient to support the conclusion that appellant is not permanently and totally disabled, no evidence existed upon which the commission could have based such conclusion. Thus, the commission abused its discretion, and a writ of mandamus will issue.

The commission in its order dated February 7, 1983, based its decision denying appellant's motion for permanent and total disability on the insufficient medical reports of five physicians, using this language: "This finding * * * is based on the medical reports of Drs. Wise, Borders, Cordell, McCloud, Hardie, the evidence in file and/or evidence adduced at the hearing." With the exception of the report of Dr. Hardie, to be discussed *infra,* none of the reports cited by the commission in support of its order attempts to evaluate the combined effect of appellant's two allowed conditions in determining whether he is permanently and totally disabled. Therefore, these reports cannot constitute evidence that appellant is not

permanently and totally disabled.[1] See *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166, 168-169 [16 O.O.3d 199].

Moreover, the sole remaining report cited by the commission, that of Dr. Hardie, a non-examining physician to whom the commission referred all the records for review, deviates from the evidentiary standard enunciated in *Wallace, supra,* and *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165 [22 O.O.3d 400].[2] These cases require that a non-examining physician expressly adopt the factual findings of one or more examining physicians, whose opinions appear in the record, as the basis of his own opinion. This standard also applies to medical opinions in

---

[1] The fact that Dr. McCloud's report found no evidence of permanent total disability does *not* tend to show that such disability does not exist when appellant's physical complaint is evaluated *in combination* with his psychiatric condition. Dr. McCloud's report addressed appellant's physical condition only. Nor does Dr. Borders' report, finding appellant twenty-five percent permanently and partially disabled based on his psychiatric condition alone, constitute evidence that appellant cannot be permanently and totally disabled based on the combined effect of both conditions. This is an elementary and straightforward application of our holding in *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199].

It should be emphasized that Dr. McCloud did not report that he found no evidence of disability whatsoever. He merely stated that he found no evidence of *permanent total* disability. This is not the equivalent of finding no physical disability of any degree.

[2] Our decision today is not one which "demonstrates a total disregard for the purpose of mandamus and completely emasculates *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165 [22 O.O.3d 400]." In *Teece* this court affirmed the court of appeals' denial of a writ of mandamus to compel the Industrial Commission to award claimant permanent total disability. Nonetheless we recognized the viability of our earlier holdings in *Anderson* and *Wallace, supra,* in this language at 167-168:

"This court agrees with appellant that the report of Dr. Kessler constitutes evidence that the claimant is permanently and totally disabled since it complied with the requirements set forth in *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199], that where a claimant's application for permanent and total disability compensation is based on two or more conditions which have been allowed by the commission, medical testimony must take into account the combined effects of these conditions in determining disability. * * *

"'* * * This court's holding in *State, ex rel. Wallace,* v. *Indus. Comm.* requires a non-examining physician to expressly adopt the factual findings of all examining physicians which appear in the record as the basis of his opinion. * * *'"

In *Teece,* there was the medical report of Dr. Kessler evaluating two separate physical injuries only as causing permanent and total disability, but not evaluating the psychiatric condition. *Teece, supra,* at 165. This conflicted with a medical report also evaluating the two separate physical injuries only, but not the psychiatric condition, concluding in substance that relator Teece was not permanently and totally disabled, as follows: " 'patient does not have sufficient objective evidence to warrant removing her from work capability.' " *Teece, supra,* at 166.

Here, in the *Thompson* case, unlike *Teece,* we do not have a medical report evaluating the physical injury alone as permanent and total disability that conflicts with a medical report evaluating physical injury alone. Our decision today is consistent with *Teece* and it need not be overruled.

combined-effect claims, where the examining physicians evaluate only one allowed condition. *State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72, 75. Dr. Hardie did not expressly adopt the factual findings of any examining physician, and therefore his report cannot constitute evidence upon which the commission may rely.

Thus, it is apparent that the commission relied entirely on medical reports which may not legally be termed evidence under *Wallace* and *Teece, supra.*

We disagree with the court of appeals' statement that "the issue before the commission was whether relator [appellant] was permanently and totally disabled as the result of his physical injury alone, * * *'' and consequently reject the erroneous conclusion flowing therefrom that "the commission was warranted in relying upon medical evidence evaluating the effects of that allowed condition only." These statements of the court of appeals completely disregard the finding of the commission dated November 27, 1979, that appellant's "conversion reaction be allowed in this claim. This order is based on the medical evidence of Drs. Rogers and Cordell." This conversion reaction is descriptive of appellant's psychiatric condition.

In addition, the court of appeals failed to recognize that the report of Dr. Mattill predated the allowance of appellant's claim for conversion reaction. Moreover, Dr. Procter's report described appellant's present condition as "severe back & neck pain; nerves," which indicates that he considered appellant's psychiatric condition, combined with his physical disability, in formulating his opinion that appellant was permanently and totally disabled.

It is incorrect to criticize the decision we reach by stating that "[t]he * * * only reason to conjure today's result is the assumed 'invulnerability' of Dr. David H. Procter's report." Dr. Procter's report is only one element to support the invulnerability of our result. His report dated November 6, 1981, describing claimant's present condition as "severe back & neck pain; nerves," obviously refers both to a physical and a psychiatric condition. Dr. Procter's report describing that part of claimant's disability associated with nerves or psychiatric condition is further corroborated by the medical report of Dr. Sheldon Rogers dated April 26, 1979, that "[t]his individual appears to be suffering from a conversion reaction." On November 27, 1979, the commission made an order recognizing claimant's conversion reaction in this language: "That Conversion Reaction be allowed in this claim. This order is based on the medical evidence of Drs. Rogers and Cordell." Thus, the reports of Drs. Rogers and Cordell, as well as the order of the commission, also establish claimant's psychiatric condition or conversion reaction (nerves). It is a desperate groping at straws to assert that our decision today rests solely on the report of Dr. Procter, and to strip that report of its true meaning and significance.

Thus, the issue of the combined effect of appellant's two allowed con-

ditions was clearly before the commission. It follows that the commission's reliance on medical evidence evaluating the effects of only one allowed condition, in reaching a decision finding appellant was *not* permanently and totally disabled, constituted an abuse of discretion. *Anderson, supra,* and *Norman, infra.* Mandamus thus becomes appropriate. *Id.*

We held in *State, ex rel. Anderson,* v. *Indus. Comm., supra,* that where the issue before the commission is whether a claimant is permanently and totally disabled on account of the combined effect of two or more allowed conditions, medical testimony not evaluating the combined effect of those conditions can *not* constitute evidence that the claimant is *not* permanently and totally disabled. That is still good law, and therefore applies to discrediting the medical reports upon which the commission relied in finding a claimant *not* permanently and totally disabled. However, we expressly stated in *State, ex rel. Norman,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 263, syllabus, that the rule stated in *State, ex rel. Anderson,* v. *Indus. Comm., supra,* "applies only to medical reports which conclude a claimant is not permanently and totally disabled. Where a medical report concludes that a claimant is permanently and totally disabled on the basis of one condition alone, the *Anderson* test does not preclude the use of that report as evidence of claimant's permanent and total disability." *State, ex rel. Hughes,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 57, 62, Clifford F. Brown, J., concurring opinion. We find no good reason for retreating at this time from the excellent postulation of the law in *Norman, supra.*

Furthermore, the instant cause is strikingly similar to *State, ex rel. Hughes,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 57. In a well-reasoned analysis authored by Justice Locher, this court held that "[n]o party may discredit a medical report which finds a workers' compensation claimant to be permanently ·and totally disabled as a result of two allowed conditions by treating, as one report, distinct reports, each of which evaluates only one of the allowed conditions." *Id.* at syllabus. Further, Justice Locher emphasized the inapplicability of *Teece, supra,* to a situation such as the one at bar where "no testimony exists which could effectively undermine, as did the one report in *Teece,* the credibility of * * * reports * * * which evaluated [the claimant's] physical and psychiatric conditions and found him to be permanently and totally disabled." *Id.* at 60.

Thus, no report which does not evaluate the combined effect of both conditions may be used pursuant to *Teece* to test the credibility of any report which does address such combined effect and which finds the claimant permanently and totally disabled. In the instant cause, therefore, the credibility of Dr. Procter's report, being the sole report which addresses both conditions and finds permanent and total disability, is invulnerable to attack from any report which does not evaluate both conditions. *None* of the other medical reports in this case addresses both conditions, except Dr. Hardie's, which cannot constitute evidence for reasons enunciated *supra.* Therefore, under the express holding of *Hughes, Teece* is irrelevant to the instant cause.

Accordingly, where the record before the Industrial Commission contains reliable, probative and substantial evidence in accordance with the law to support a factual finding and determination that a claimant is permanently and totally disabled, and there is no evidence to the contrary which meets such standards, a determination of the commission that the claimant is not permanently and totally disabled is an abuse of discretion by the commission for which the claimant will be afforded relief in an action in mandamus.[3]

Accordingly, the judgment of the court of appeals must be reversed, and the writ of mandamus is hereby allowed.

*Judgment reversed and writ allowed.*

CELEBREZZE, C.J., SWEENEY and DOUGLAS, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

LOCHER, J., dissenting. The majority's only reason to conjure today's result is the assumed "invulnerability" of Dr. David H. Procter's report. This assumption is without foundation and I must therefore dissent.

I

Dr. Procter's November 6, 1981 report describes claimant's present condition as "severe back & neck pain; nerves." In contrast, the majority's actual rationale for upgrading the severity of claimant's disability from permanent partial to permanent total disability is conversion reaction. "Conversion reaction" is defined the same as "conversion hysteria" which, in turn, is defined as: "[a] form of hysteria or psychoneurosis in which physical signs and symptoms are substituted for anxiety. A condition in which the cause of anxiety is converted into functional symptoms which may include blindness or deafness, paralysis, etc." Schmidt, Attorneys' Dictionary of Medicine and Word Finder (1985). It should be obvious that conversion reaction is a complex psychological disorder and is not synonymous with "nerves." Dr. Procter made no psychological determination or analysis with respect to conversion reaction. The reference in the report to "nerves" is undefined. Had the majority sought to define the term they would have had to face the reality that "nerves," in the context of Dr. Procter's report, is "a colloquialism meaning general excitability, uneasiness or fearfulness * * *." Hinsie & Camp-

---

[3] We adopt this standard today for the purpose of clarifying our previous holdings in *State, ex rel. Norman,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 263, and *State, ex rel. Hughes,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 57. Both *Norman* and *Hughes* address the evidentiary use of medical reports in combined-effect claims. The standard announced today is a distillation of the law as enunciated in those cases, as well as in *State, ex rel. Anderson,* v. *Indus. Comm., supra.*

bell, Psychiatric Dictionary (4 Ed. 1970). Attempts to bootstrap "nerves," a general physical observation, into a psychological analysis or to equate the term with "conversion reaction" are entirely without medical or legal foundation.

The majority further asserts that a previous conversion reaction claim, allowed by the commission as an additional psychological condition in 1979, is critically relevant to claimant's condition in 1981. This too is without foundation. By definition, conversion reaction is a condition manifested in different ways and to varying degrees. Unless Dr. Procter could correlate claimant's physical condition specifically with conversion reaction in 1981, it was not erroneous for either the commission or the court of appeals to disregard the November 27, 1979 commission finding of a permanent partial conversion reaction condition. Dr. Procter's 1981 report made no mention of conversion reaction and could not therefore be viewed as a valid physical and psychological report — only a physical report.

Similarly, the majority's syllabus and elaborate analysis, innocuous on their faces, are inappropriate based upon the majority's non-existent factual assumption. Attempts to take a colloquial expression in a medical report and rewrite its definition in order to disallow valid opposing evidence — such as Dr. William J. McCloud's physical examination of and report concerning claimant and subsequent deposition relating thereto which only found a permanent partial condition — so as to achieve a preordained result, transcend the institutional authority of this court.

The commission is vested with the responsibility to weigh conflicting evidence and determine appropriate levels of compensation. See State, ex rel. Paragon, v. Indus. Comm. (1983), 5 Ohio St. 3d 72, 74. The commission had the basic medical knowledge to recognize that the term "nerves" in Dr. Procter's report had no deep psychological import, nor could the term turn a two-year-old permanent partial disability condition into a permanent total disability. The court of appeals properly recognized that Dr. Procter's report was a physical, not a psychological, report and properly acceded to commission discretion by the denial of mandamus.

II

The extraordinary writ of mandamus may only be granted where, inter alia, there is a clear legal right to the relief sought and a clear legal duty on the part of, in this instance, the commission to award the aforesaid relief. State, ex rel. Hughes, v. Indus. Comm. (1982), 1 Ohio St. 3d 57, 58. For a majority of this court to grant mandamus in this case, under these circumstances, demonstrates a total disregard for the proper use of mandamus and completely emasculates State, ex rel. Teece, v. Indus. Comm. (1981), 68 Ohio St. 2d 165 [22 O.O.3d 400]. Medical conclusions based on result-oriented wishful thinking should not and cannot be proper bases for granting mandamus or any other judicial redress. Accordingly I dissent.

HOLMES and WRIGHT, JJ., concur in the foregoing dissenting opinion.