THE STATE, EX REL. WALTERS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE, ET AL.

[Cite as State, ex rel. Walters, *v.* Indus. Comm. (1985), 20 Ohio St. 3d 71.]

(No. 85-26—Decided December 4, 1985.)

*E. S. Gallon & Assoc.* and *Richard M. Malone,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet Jackson* and *Tyrone K. Yates,* for appellee.

CELEBREZZE, C.J. It is firmly established that the resolution of "* * * disputed factual situations is within the final jurisdiction of the Industrial Commission, and subject to correction by action in mandamus only upon a showing of abuse of discretion." *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15, 16 [58 O.O.2d 70].

This court has held that when there is no evidence upon which the

commission could have based its order, there is an abuse of discretion and mandamus is appropriate. *State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55, 58 [11 O.O.3d 216]. Conversely, where the record contains some evidence supporting the commission's finding that the claimant is not totally disabled, its findings will not be disturbed (*State, ex rel. Allerton,* v. *Indus. Comm.* [1982], 69 Ohio St. 2d 396, 397 [23 O.O.3d 358]) unless the claimant has produced "reliable, probative, and substantial" evidence to support his claim of permanent total disability. *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76, syllabus. In such a case, the commission must show some evidence to the contrary which "meets such standards" in order to justify its order denying those benefits. *Id.*

In the instant case we note that appellant's evidence, contained in Dr. King's report, was reliable, probative, substantial and definite. In contrast, the evidence given by Dr. McCloud to support the commission's determination that appellant was not permanently and totally disabled was demonstrably not reliable, probative, or substantial because of Dr. McCloud's equivocation in deposition.

In his report, Dr. King opined that appellant's significant work-related impairment,[1] viewed in light of his age, lack of education, and lack of job skills, left him totally unsuited for any future gainful employment.[2] Dr. King's well-considered findings are factually supported and his conclusion concerning the extent of appellant's disability is reliable, probative, and substantial evidence supporting appellant's claim.

The decision of the commission, however, reflects the opinion contained in Dr. McCloud's report, in which he stated that appellant was not totally impaired. In contrast, to Dr. King's steadfast conclusion that appellant was totally disabled and hence unemployable, Dr. McCloud, subsequent to his medical report, changed his view concerning the effect appellant's impairment had on his employment prospects. For example, during deposition, Dr. McCloud first agreed with Dr. King's evaluation as to appellant's total disability, then stated that appellant was not unfit for some type of gainful employment and then again specifically agreed with Dr. King's findings as to both appellant's impairment and total disability.

---

[1] Although Dr. King used the terms "impairment" and "disability" interchangeably, a fair reading of his report makes clear that he concluded that appellant had incurred a twenty-five to thirty percent physical impairment, which, when viewed against appellant's age, education and work experience, resulted in a permanent total disability. See *Meeks* v. *Ohio Brass Co.* (1984), 10 Ohio St. 3d 147, 149.

[2] The Medical Examination Manual of the commission states, at page vi, that permanent total disability "* * * is established when the injury has caused the injured worker to be unfit for sustained remunerative employment."

This court requires that determinations of disability be based on the claimant's ability to return to the type of work for which he or she is qualified. *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630 [23 O.O.3d 518].

At worst, Dr. McCloud contradicted himself; at best, his conclusion that appellant was not totally disabled was equivocal.

This court faced a strikingly similar situation in *State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72. In that case, a physician examined the appellant at the commission's request and produced a report which stated that appellant was totally disabled but might be able to return to work if "motivated." We held that such an equivocal report "does not constitute evidence upon which the commission may either grant or deny appellant's application" for permanent total disability benefits. *Id.* at 76. See *State, ex rel. Jennings,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 101.

In the instant case, the physician's equivocation came at deposition, where counsel for both parties elicited Dr. McCloud's opinion as to the extent of appellant's disability. Dr. McCloud's opinions on that issue were part of the record and were admittedly relied upon by the commission. The apparent uncertainty in Dr. McCloud's position gives the commission an insufficient basis to support its order denying appellant permanent total disability benefits.[3]

Accordingly, we conclude that there is reliable, probative, and substantial evidence in support of appellant's claim. While the record also contains some evidence to the contrary, it does not meet the above standards and thus cannot support the commission's denial of the claim. We therefore hold that mandamus will issue where the record contains reliable, probative, and substantial evidence supporting a claim for permanent total disability benefits and the decision of the Industrial Commission to the contrary is based solely on a medical report where the reporting physician, during a later deposition, equivocates or contradicts his opinion concerning the extent of disability.

The judgment of the court of appeals is reversed and the writ prayed for is allowed.

*Judgment reversed*
*and writ allowed.*

SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

---

[3] In the case at bar, both doctors spoke to both impairment and disability. We recognize that determinations as to extent of impairment are medical in nature, while determinations as to extent of disability are administrative in nature. *State, ex rel. Dallas,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 193. However, the commission itself often refers to and relies on doctors' opinions as to extent of disability when making its determination as to permanent total disability benefits. *State, ex rel. Kokocinski,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 186, 188. Such is the case here. The commission relied on Dr. McCloud's statement that appellant was not unfit for gainful employment, yet disregarded the doctor's later statements agreeing with Dr. King that appellant was totally disabled. The commission cannot claim that it alone determines extent of disability when it makes this determination solely by relying on an equivocating medical expert.

HOLMES, J., dissenting. I dissent in that I find the record reflects facts quite different from those found and interpreted by the majority. I find there to be no equivocation or contradiction within the testimony adduced from one of the examining physicians upon which evidence the commission relied in making its determination that this claimant was not permanently and totally disabled.

The major concern of the majority is the commentary of Dr. McCloud concerning the report of Dr. King. There is no equivocation or contradiction in Dr. McCloud's testimony in this regard. Dr. King's report stated *aliunde*:

"* * * While I feel that this patient had some impairment of his left shoulder, I don't feel that it is of such a magnitude that is deserving 100% disability. * * * I feel as if his chances of being gainfully employed is [*sic*] nil, but, as far as his objective disability is concern [*sic*], I feel that he has 25 to 30% disability. I certainly don't feel that this man is 100% disabled. From the duration of this injury over 12 years, I don't feel that this man will ever be able to return to the job market on a [*sic*] active basis, however, I certainly don't feel that he is 100% impaired. I feel that this man's problem is approximately 25 to 30% of an impairment, from him being a functional individual."

Unlike the statement of counsel for claimant, as contained in the majority opinion here, Dr. King did not state that the claimant's "prospect of returning back to the employment market was nil." Precisely what he stated was that he didn't feel "that this man will ever be able to return to the job market on a [*sic*] active basis * * *." The reasonable interpretation of this language is that the claimant is not totally disabled from an objective physical basis, and that due to all factors of the total man, *i.e.*, physical condition, age, job training, the claimant would not be able to return to the job market *on an active basis*.

Dr. McCloud, upon deposition, merely was indicating his approval with Dr. King that the claimant was not totally disabled, and that the claimant may not be able to return to the job market *on an active basis* in the same manner as prior to his injuries.

Thereafter, Dr. McCloud emphasized his prior commentary in his testimony upon direct examination:

"Q. Just one more question, Doctor. In light of Dr. King's report and this discussion at the deposition regarding the impairment due to the allowed condition, is it your opinion that the claimant in a physical sense is completely precluded from a substantially remunerative employment?

"A. No, it is not."

On re-cross, Dr. McCloud was again asked to explain his answer:

"Q. The only question I have, Doctor, then, the opinion that you expressed today, which is in agreement with that of Dr. King, was an opinion expressed taking into consideration age, educational background, past work experience and the impairment as found by you; is that correct?

"A. That answer was directed towards my response to Dr. King's evaluation, which I feel was very close to my evaluation as well, and he included both impairment and disability. From that standpoint, I agree with him."

Indeed, as noted by Dr. McCloud, Dr. King's position as to the disability of the claimant was quite similar to his own. In his prior report, Dr. McCloud had stated:

"* * * It is my opinion this patient does not present with medical evidence consistant [sic] with considering him permanently and totally impaired based on the injuries to his upper left extremity. I would extimate [sic] that he has a PPI of 40% of the body as a whole in regards to the injuries noted in this claim."

These statements are unequivocal, as found by the court of appeals' decision in affirmance of the order of the Industrial Commission. There definitely was some evidence to support the commission's order.

Mandamus is an extraordinary legal remedy, the essential purpose of which is to command the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. The writ will not issue in a doubtful case, or where the effect of its issuance would be to control the discretion of the one against whom it would be directed. *State, ex rel. Gerspacher,* v. *Coffinberry* (1952), 157 Ohio St. 32 [47 O.O. 31], paragraph one of the syllabus. The relator seeking the writ must establish a clear legal right to the relief sought. *State, ex rel. Stevenson,* v. *Murray* (1982), 69 Ohio St. 2d 112, 114 [23 O.O.3d 160].

In addition, since the respondent has referred to the evidence upon which it has based its order, consistent with *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, no abuse of discretion and, therefore, no clear right to a writ, have been shown by relator. As such, relator's request for a writ of mandamus should be denied.

LOCHER and WRIGHT, JJ., concur in the foregoing dissenting opinion.