DECISION
{¶ 1} Relator, Frank D. Richko ("relator") commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for a closed period of temporary total disability ("TTD") compensation, and also ordering the commission to find that relator is entitled to that period of compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in denying relator's request for TTD and recommended that this court deny the requested writ of mandamus. Relator filed multiple objections to the magistrate's decision, and the commission filed a memorandum opposing the objections. This cause is now before the court for a full evaluation of the merits.
 {¶ 3} Relator raises three objections to the magistrate's findings of fact. First, he argues that the magistrate incorrectly found that the commission based its allowance of relator's claim partially on "the operative report from the Cleveland Clinic." He argues that the magistrate did not make it clear that the allowance was based on a larger body of Cleveland Clinic records, of which the operative report was only a part. Relator is correct that the May 22, 2004 staff hearing officer ("SHO") order states that it is based on Dr. Rosenberg's November 18, 2003 report, Dr. Mazzone's August 23, 2002 report and "Cleveland Clinic records." We see no error in the magistrate's factual finding that the SHO's allowance was, in fact, based on the operative report, but in the interest of making the magistrate's finding more complete, we will sustain this objection and modify paragraph 26 to state that the commission relied on the operative report and other records from the Cleveland Clinic.
 {¶ 4} Next, relator argues that the magistrate incorrectly found that the commission order "specifically noted that there was no evidence of compensable lost time." (Nov. 30, 2005 Magistrate's Decision, ¶ 26, infra.) Relator argues that this statement "suggests that the commission reviewed the issue of whether relator lost time from work as the result of the lung resection" when in actuality, the notation merely "serve[d] to defer the issue of disability and anticipates a later submission of a request for compensation, as is often the case when busy surgeons have difficulty catching up on paperwork." (Relator's Objections, at 1.) Relator's objection is not well-taken. We are concerned with reviewing the magistrate's factual findings, and making our own independent findings of fact; we do not concern ourselves with what these factual findings may "suggest" to others. The fact is that the SHO order states, "[c]urrently, no evidence of compensable lost time has been submitted to the claim file." Thus, the magistrate's factual finding is correct. We need not be concerned with any additional meaning this statement may have had to those dealing with the file at the administrative level. Accordingly, relator's second objection is overruled.
 {¶ 5} Next, relator argues that the magistrate incorrectly found that Dr. Randolph reviewed "evidence which he had not previously examined" in preparation for writing his October 8, 2004 addendum. (Nov. 30, 2005 Magistrate's Decision, ¶ 38, infra.) Relator argues that the magistrate erroneously took Dr. Randolph at his word when he stated, in the addendum, that he had reviewed new materials, but that close inspection of the February 27, 2004 report and the October 8, 2004 addendum reveals that Dr. Randolph reviewed the same evidence both times. Relator argues that this is significant because it reveals Dr. Randolph's difficulty in discerning between old and new information. This, relator contends, is critical to relator's argument that because the two reports represent merely two different conclusions drawn from the same records, the commission's non-reliance upon the February report precludes reliance upon the October addendum. The magistrate rejected his argument, finding that because Dr. Randolph examined evidence he had not previously examined, the October 8, 2004 addendum was not subject to the prohibition underState ex rel. Zamora v. Indus. Comm. (1989), 45 Ohio St.3d 17,543 N.E.2d 87.
 {¶ 6} In response, the commission argues, essentially, that relator's attempt to discredit Dr. Randolph's addendum makes no difference because the commission's decision was based not solely on that addendum, but also upon the blood test results contained in the stipulated evidence, which demonstrates that relator's blood tested negative for the cryptococcosis fungus. This argument goes to the question whether the magistrate erred in ultimately concluding that the commission did not abuse its discretion, but before we address that question we must first deal with relator's objections to the magistrate's findings of fact.
 {¶ 7} In Zamora, supra, the Supreme Court of Ohio held that where the commission makes a finding that is necessarily premised on a rejection of a given doctor's conclusion, then the commission cannot revive that report as evidence supporting a later finding. The holding is based upon the notion that "it [is] inconsistent to permit the commission to reject * * * [a] report at one level, for whatever reason, and rely on it at another."Zamora, at 19. The principle expressed in "Zamora is properly invoked when the commission tries to revive evidence that was previously deemed unpersuasive." State ex rel. Tilley v. Indus.Comm. (1997), 78 Ohio St. 3d 524, 528, 678 N.E.2d 1392.
 {¶ 8} A review of Dr. Randolph's February 2004 report reveals that before preparing this report he reviewed, inter alia, the May 21, 2002 operative report, the May 27, 2002 discharge summary, the June 4, 2002 surgical pathology report, and the July 2, 2002 lumbar puncture.[1] In his October 2004 addendum, Dr. Randolph states that he reviewed, as "additional" information, the May 21, 2002 operative report, the May 27, 2002 discharge summary, Dr. Rice's June 2, 2004 C-84, the June 4, 2002 surgical pathology report, and the July 2, 2002 cryptococcal antigen and fungal culture reports.
 {¶ 9} With the exception of Dr. Rice's C-84 (which itself is based solely on the May 21, 2004 operative report), Dr. Randolph reviewed nothing to prepare his October addendum that he had not already reviewed to prepare his February 2004 report. Thus, it is fair to state that the only new information that Dr. Randolph reviewed in preparing his addendum was Dr. Rice's C-84, in which Dr. Rice opined, based upon the May 21, 2004 operative report, that relator's period of disability was causally related to his allowed condition. However, it is not fair to state, as relator urges, that Dr. Randolph reviewed nothing new at all. Dr. Rice's C-84 is a medical record that not insignificantly contains the treating physician's opinion, which was not available to Dr. Randolph at the time he prepared his February report. Accordingly, relator's third objection is sustained in part and overruled in part, and the magistrate's decision is modified to add the proviso that Dr. Randolph examined the same evidence for his October addendum that he had examined for his February report, with the exception of Dr. Rice's C-84, which Dr. Randolph had not previously examined.
 {¶ 10} Next, relator raises three objections to the magistrate's conclusions of law. For his fourth objection, relator argues that the magistrate erred in concluding that Dr. Randolph's October 8, 2004 addendum is not equivocal. The Supreme Court of Ohio has held that contradictory or equivocal statements by the same physician cannot, as a matter of law, support an award of compensation. State ex rel. Walters v. Indus. Comm.
(1985), 20 Ohio St.3d 71, 20 OBR 402, 486 N.E.2d 94. Thus, "equivocal medical opinions are not evidence." State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657,640 N.E.2d 815.
 {¶ 11} The magistrate rejected appellant's argument that the addendum is not evidence, explaining that Dr. Randolph made only one "misstatement" (by stating he had examined relator and taken a history from him, when in fact he had not) and that this mistake is not enough to remove the report from evidentiary consideration. But relator argues that, in addition to the erroneous statement that Dr. Randolph had examined relator and taken a history from him, Dr. Randolph's addendum also states that the doctor had reviewed new information when he had not. Relator argues that the "[m]isstatements and inaccuracies are so pervasive throughout Dr. Randolph's addendum that the credibility and reliability of his opinion are destroyed rendering the entire opinion equivocal." (Relator's Objections, at 4.)
 {¶ 12} We agree that the addendum contains two misstatements. However, this does not mean that the addendum is equivocal. The addendum is not internally inconsistent and Dr. Randolph is not unclear or uncertain about his conclusions, nor is it unclear whether Dr. Randolph understands what he means. This report is not equivocal and is not barred from consideration by Eberhardt
and its progeny. The magistrate did not err in concluding that Dr. Randolph's October 8, 2004 addendum was unequivocal; accordingly, relator's fourth objection is overruled.
 {¶ 13} In relator's fifth objection, he argues that the magistrate erred in determining that in his addendum, Dr. Randolph accepted the findings of the examining physicians. Relator argues that the magistrate's conclusion misappliesWallace v. Indus. Comm. (1979), 57 Ohio St.2d 55,386 N.E.2d 1109, in which the Supreme Court of Ohio held that, "the non-examining physician is required to expressly accept all the findings of the examining physician, but not the opinion drawn therefrom." Id. at 59. Relator argues that Dr. Randolph's listing of the medical records he reviewed, along with the results of various diagnostic tests performed by examining physicians, amounts to no more than a "regurgitation" of the medical record and inadequately expresses his acceptance of the treating physicians' findings.
 {¶ 14} We note that since its decision in Wallace, the Supreme Court of Ohio has expressed approval of commission reliance upon a non-examining physician's report that impliedly
accepts the findings of examining physicians. See, e.g., Stateex rel. Hughes v. Goodyear Tire Rubber Co. (1986),26 Ohio St. 3d 71, 74, 26 OBR 61, 498 N.E.2d 459; State ex rel. Lampkins v.Dayton Malleable, Inc. (1989), 45 Ohio St. 3d 14, 16,542 N.E.2d 1105. As the magistrate pointed out, in his October 8, 2004 addendum, Dr. Randolph correctly lists the findings and test results gleaned from the reports of relator's treating physicians. Though Dr. Randolph ultimately concludes, based on one of those test results (the negative test for cryptococcosis) that relator's period of disability is not causally related to the allowed condition of cryptococcosis, that does not mean that Dr. Randolph has not accepted the examining physicians' objective medical findings. As such, relator's fifth objection is overruled.
 {¶ 15} In his sixth and final objection, relator argues that the magistrate erred in concluding that the commission is not precluded by State ex rel. Zamora v. Indus. Comm. (1989),45 Ohio St.3d 17, 543 N.E.2d 87, from considering Dr. Randolph's October 8, 2004 addendum. Relator argues that Dr. Randolph's February and October 2004 reports "rely on identical evidence and offer identical opinions"[2] and, pursuant to State exrel. Hoover v. Indus. Comm. (1995), 72 Ohio St.3d 387,650 N.E.2d 459, because the commission rejected the February report when it allowed relator's claim, it is prohibited from relying on the October report.
 {¶ 16} In Hoover, the Supreme Court of Ohio determined that a report that constituted "no more than a pure recitation" of an earlier report based on the same examination was not "new" evidence and was thus barred by Zamora. Id. at 391. ButHoover is inapposite. In Hoover, both reports, based on the same medical evidence, contained the ultimate opinion that the claimant was incapable of sustained remunerative employment. TheHoover court rejected the claimant's argument that because the first report was prepared for permanent total disability ("PTD") purposes, not TTD purposes, it could not have been rejected when the SHO earlier denied the request for TTD. The court reasoned that because the opinion expressed in the first report necessarily encompassed the issue germane to the TTD hearing, to wit: whether the claimant was capable of returning to her former position of employment, when the commission denied her TTD application, it implicitly rejected the first opinion. Since the second opinion, submitted with the claimant's PTD application was a "pure recitation" of the first, it was barred from consideration by Zamora.
 {¶ 17} Here, although Dr. Randolph's two reports contain reference to identical sets of medical records, the first contains the opinion that relator does not suffer from cryptoccocosis, while the second contains the opinion that relator's requested period of disability is not causally related to the then-allowed condition of cryptoccocosis. While we agree that the commission's allowance of the claim for cryptoccocosis is an implicit rejection of Dr. Randolph's first report insofar as the same opines that relator did not suffer from that malady, we do not think the commission's allowance precludes, underZamora, the commission's consideration of Dr. Randolph's later opinion regarding the causal link between the allowed condition and a period of disability for which TTD was requested after the allowance decision was made. This case presents one of the closerZamora questions due simply to the fact that relator's claim was allowed for a condition from which he does not suffer, but we think that Dr. Randolph's two opinions are substantively different such that Zamora does not remove the second from the commission's consideration. "[Zamora] does not preclude reliance on reports by an author simply because one of the author's reports has been rejected[.]" State ex rel. Value CityDept. Stores v. Indus. Comm. (2002), 97 Ohio St.3d 187,2002-Ohio-5810, 777 N.E.2d 249, ¶ 22. For the foregoing reasons, relator's sixth objection is overruled.
 {¶ 18} Finally, though we held, in State ex rel.SBC/Ameritech v. Indus. Comm., 10th Dist. No. 04AP-978, 2005-Ohio-5091, ¶ 7, that when a self-insured employer authorizes a surgery it cannot later claim that TTD compensation should not be paid during the claimant's reasonable period of recovery from that surgery, there is no indication that the employer or the Ohio Bureau of Workers' Compensation authorized relator's surgery. Indeed, relator did not even seek workers' compensation benefits in the claim until over one year after the surgery took place. Accordingly, this case does not present the same situation that was present in SBC/Ameritech.
 {¶ 19} Having undertaken a review of relator's objections, considered the arguments of the parties, and independently appraised the record, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except to the extent that they are inconsistent with our discussion hereinabove, and we deny the requested writ of mandamus.
Objections sustained in part and overruled in part; writ ofmandamus denied.
Bryant and French, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Frank D. Richko, : Relator, : v. : No. 05AP-545 Equity Residential Properties Management : Corp. and Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 30, 2005 Wincek DeRosa Bucalo Co., L.P.A., Christopher G. Wincek andJohn C. Bucalo, for relator.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 20} Relator, Frank D. Richko, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for a closed period of temporary total disability ("TTD") compensation, and ordering the commission to find that relator is entitled to that period of compensation.
Findings of Fact:
 {¶ 21} 1. Based upon statements contained in the record, relator was a part-time employee for respondent Equity Residential Properties ("employer") from July through September 2001. Relator's work involved changing light bulbs on outdoor fixtures. According to statements he made to his doctors, relator was exposed to bird droppings.
 {¶ 22} 2. In early 2002, relator was experiencing coughing and chest congestion. A CT scan was performed showing a "nodule in his left hilum (lung) which `must be considered a neoplasm (tumor) until proven otherwise.'"
 {¶ 23} 3. In the February 27, 2004 report of David C. Randolph, M.D., a May 3, 2002 evaluation is referenced. Dr. Randolph noted that evaluation as follows:
* * * This notes that "2 months ago he had the flu with aches and pains, fever/chills." A chest x-ray references a left lung mass. This reports wheezing with exercise and excessive smoking. A diagnosis of asthmatic bronchitis was provided. Reference is made to a "40 pack year" smoker. This notes he has been taking Albuterol inhaler for asthma as the only listed medication. An examination is performed. No acute abnormalities are noted. There are several illegible entries. This discusses a variety of potential causes including "TB, histoplasmosis, sarcoid, etc., strong smoking history and lack of other symptoms make it highly suspicious for malignancy." Further diagnostic studies are discussed. A later diagnosis is provided of pulmonary Cryptococcosis which is "likely isolated disease." Further treatments are discussed.
 {¶ 24} 4. Surgery was performed on relator on May 21, 2002 for the following pre-operative diagnosis: "Left upper lobe mass lesion." The post-operative diagnosis was "Inflammatory mass lesion." A portion of the tumor removed was sent to the laboratory for testing. The surgical pathology report indicates that the various tests for fungal and bacterial organisms were all negative and that the blood test, dated July 2, 2002, indicates: "Czyptococcal [sic] antigen detection result: Negative By latex agglutination."
 {¶ 25} 5. On September 24, 2003, relator filed an application for workers' compensation benefits.
 {¶ 26} 6. The matter was ultimately heard before a staff hearing officer ("SHO") on May 19, 2004, at which time relator's claim was allowed for "cryptococcosis." The SHO relied upon the November 18, 2003 report of David M. Rosenberg, M.D., who opined that relator had contracted cryptococcosis during the time he cleaned light fixtures for the employer. The commission also relied upon the August 23, 2002 report of Peter Mazzone, M.D., and the operative report from the Cleveland Clinic. The SHO specifically noted that there was no evidence of compensable lost time. The SHO also noted Dr. Randolph's February 27, 2004 report and noted as follows:
The Hearing Officer reviewed Dr. Randolph's report dated 02/27/2004 and finds that Dr. Randolph does bring up some valid concerns as to the lack of objective medical documentation to support the diagnosis, the one day length of exposure sufficient to cause the disease and claimant's pre-existing health condition. However, Dr. Rosenberg is a pulmonary specialist and is of the opinion that claimant did contract the disease based upon the history given. Thus, since Dr. Rosenberg is the independent evaluator, the Hearing Officer relied upon his opinion and conclusion.
 {¶ 27} 7. On May 27, 2004, relator filed a motion requesting the payment of TTD compensation from May 21 through September 25, 2002 with May 21, 2002 being the date of his surgery.
 {¶ 28} 8. Dr. Randolph prepared an addendum report dated October 8, 2004, after reviewing additional records that were submitted to him. Relative to his February 27, 2004 report, Dr. Randolph summarized his opinion as follows:
Extensive records were submitted for review and a rather lengthy opinion expressed based upon a review of those records. It was my opinion that this claimant had a longstanding history of respiratory problems. The objective clinical record which was provided was not adequate to indicate and, in fact, did not support that this claimant had cryptococcosis. There were various findings noted however these very well could have been related to factors and issues unrelated to the condition known as "cryptococcosis."
It was finally noted that this claimant had a blood test for "cryptococcal antigen" and was found to be negative. An addendum with respect to that indicated that "whatever was going on in Mr. Richko's chest wall requiring his extensive treatment had nothing to do with the condition known as Cryptococcosis or the cryptococcosis organism.["]
 {¶ 29} Thereafter, Dr. Randolph identified the additional evidence which he considered including the May 21, 2002 operative report, the discharge summary, the C-84 form dated June 2, 2004 submitted by Thomas W. Rice, M.D., a surgical pathology report dated June 4, 2002, indicating that the lesion removed from relator did not contain any fungal or bacterial organisms, and the July 2, 2002 blood report noting that there is no evidence of cryptococcosis antigen in relator's blood. Based upon the additional information and the records previously reviewed by him, Dr. Randolph opined that relator's period of requested disability was not based upon the allowed condition of cryptococcosis. Dr. Randolph opined that the May 21, 2002 surgery was performed to discover the etiology of relator's observed abnormalities and that the surgical procedure itself was not performed for the condition known as cryptococcosis. Dr. Randolph opined that any subsequent treatment and disability or need for absence from work was not, therefore, related to the allowed condition of cryptococcosis.
 {¶ 30} 9. Relator's request for TTD compensation was heard before a district hearing officer ("DHO") on October 13, 2004, and resulted in an order denying the request.
 {¶ 31} 10. Relator appealed. The matter was heard before an SHO on November 23, 2004, and resulted in an order modifying the prior DHO order but denying TTD compensation as follows:
The Staff Hearing Officer finds that there is no jurisdiction to address the period of temporary total compensation requested from 05/21/2002 through 05/26/2002 due to the two year statute of limitations provisions imposed by Ohio Revised Code Section4123.84.
The Staff Hearing Officer denies temporary total compensation from 05/27/2002 through 09/25/2002 inclusive. Based upon the 10/08/2004 report of Dr. Randolph and the 07/02/2002 blood test which was negative for the allowed condition, the Staff Hearing Officer finds that insufficient medical evidence has been presented to causally relate the alleged disability period to the allowed condition in this claim.
 {¶ 32} 11. Further appeal by relator was refused by order of the commission mailed December 21, 2004.
 {¶ 33} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 34} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 35} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. See R.C.4123.56(A); State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630.
 {¶ 36} In the present case, relator contends that the commission abused its discretion in denying his requested period of TTD compensation. Relator contends that the October 8, 2004 addendum of Dr. Randolph is factually and legally flawed. First, relator points out that Dr. Randolph indicated, at the end of his report, that his opinion was "based upon my examination and the history as provided by the patient and the medical records as described above." Because Dr. Randolph did not examine claimant, he only reviewed medical records, and made this misstatement, relator contends that his report should have been removed from consideration. This magistrate disagrees. A review of both of Dr. Randolph's reports indicates that he performed an extensive review of a great deal of medical evidence in the record and that he based his opinion upon the review of that evidence. The magistrate finds that this one misstatement in his October 8, 2004 report indicating that he actually examined claimant and that claimant had provided part of the history is not a valid reason for completely removing his report from evidentiary consideration.
 {¶ 37} Relator also contends that the October 8, 2004 report should be removed from evidence because Dr. Randolph did not expressly accept the findings of the examining physicians as required by State ex rel. Consolidation Coal Co. v. Indus.Comm. (1997), 78 Ohio St.3d 176. Relator is correct to point out that as a non-examining physician, Dr. Randolph was required to explicitly accept exam findings. In both of his reports, dated February 27 and October 8, 2004, Dr. Randolph accurately listed the findings of all the medical tests and opinions of all the doctors who had examined relator and rendered opinions relative to his condition. Furthermore, even though Dr. Randolph opined that relator did not have cryptococcosis in his February 27, 2004 report, in his October 8, 2004 addendum, Dr. Randolph accepted that relator had cryptococcosis but that the surgical procedure performed on May 21, 2004 and the subsequent treatment or need for absence from work was not related to the allowed condition known as cryptococcosis. While Dr. Randolph stated that certain doctors had noted that relator had the condition known as cryptococcosis, he also noted that those doctors did not point to any verifiable evidence supporting their opinion. This does not mean that Dr. Randolph did not accept the findings as required.
 {¶ 38} Relator also contends that pursuant to State ex rel.Zamora v. Indus. Comm. (1989), 45 Ohio St.3d 17, the commission had already implicitly rejected Dr. Randolph's earlier February 27, 2004 report and that the commission was therefore required to reject his October 8, 2004 addendum. This magistrate disagrees. First, although Dr. Randolph indicated that his October 8, 2004 report was an addendum to his earlier report, he also made it perfectly clear that he was examining evidence which he had not previously examined and, moreover, that he was accepting that relator's claim had been allowed for cryptococcosis. These facts remove Dr. Randolph's October 8, 2004 report from the Zamora prohibition.
 {¶ 39} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion by denying him a closed period of TTD compensation and relator's request for a writ of mandamus should be denied.
[1] In his February 2004 report Dr. Randolph referred to this test, used to conduct the cryptococcal antigen and fungal cultures, as being dated July 3, 2002, stating "but the year is not clear."
[2] Relator's Objections, at 6.