THE STATE, EX REL. ROUCH, APPELLANT, *v.* EAGLE TOOL & MACHINE CO.; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as State, ex rel. Rouch, *v.* Eagle Tool & Machine Co. (1986), 26 Ohio St. 3d 197.]

(No. 85-1608—Decided September 23, 1986.)

*Michael J. Muldoon,* for appellant.
*Jenice R. Golson,* for appellee.

*Per Curiam.* In order for this court to issue a writ of mandamus, appellant must show that he has a clear legal right to the relief sought, and that the commission has a clear legal duty to provide such relief. See, *e.g., State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141 [40 O.O.2d 141]; *State, ex rel. Elliott,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 76. To show that a clear legal right to relief exists, appellant must demonstrate that the commission abused its discretion. See, *e.g., State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66]; *Elliott, supra.* This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding.[1]

This court has in the past set forth conditions for when a physician's report assessing impairment would be considered some evidence to support a finding by the commission. In *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199], the court decided that the commission, in determining whether a claimant's disability has been caused by the combined effect of two or more allowed conditions, may not

---

[1] We wish to clarify that the "some evidence" test is and has for years been the appropriate standard for review of the Industrial Commission's findings. See, *e.g., Elliott, supra; State, ex rel. Milburn,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 119; *State, ex rel. Hudson,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 169; *State, ex rel. G F Business Equip., Inc.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O.3d 379]; *State, ex rel. Dodson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 408 [16 O.O.3d 439]; *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77 [14 O.O.3d 275].

consider and rely on a medical report in which the physician does not evaluate the combined effect of all the allowed conditions. In *State, ex rel. Teece*, v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 168 [22 O.O.3d 400], the court modified *Anderson* by holding that although reports in which an examining physician did not evaluate the combined effect of all the allowed conditions were insufficient to support a commission order, such reports were nevertheless admissible as relevant evidence for the limited purpose of testing the credibility and reliability of reports complying with the *Anderson* standard.[2] *Teece* was later undermined in *State, ex rel. Thompson*, v. *Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76, 77-78, in which this court held that physicians' reports which did not evaluate the combined effect of all the claimant's allowed conditions did not constitute evidence that the claimant was not disabled. *Thompson* required a physician who examined the claimant with regard to one allowed condition to expressly adopt the findings of one or more physicians who had examined the claimant with regard to the other allowed conditions. *Id.* Today we modify the holdings in *Anderson* and *Thompson*.

In the case at bar and *State, ex rel. Hughes*, v. *Goodyear Tire & Rubber Co.* (1986), 26 Ohio St. 3d 71, we now recognize that it is impracticable to require, through hypertechnical evidentiary rules, that physicians pretend to be specialists in all fields of medicine. This court should not usurp the role of the commission in determining disability by creating arbitrary exclusionary rules that eliminate evidence the commission may deem credible and relevant. We hold that the Industrial Commission, in determining whether a claimant is disabled due to the combined effect of two or more allowed conditions, may base its finding upon the medical report of a physician who examines the claimant with regard to one of the allowed conditions and recognizes the existence of the other allowed condition(s) by referring to them in his report. We further hold that the commission, in making this disability determination, may consider and rely on a medical report in which an examining physician evaluates a claimant only with regard to the condition that relates to the physician's particular area of expertise. See *Teece, supra*, at 168. The holdings today are consistent with our general obligation to construe the workers' compensation laws in a remedial manner, because the commission will now be able to review a wider range of evidence. The evidence submitted to the commission must

---

[2] *Teece* similarly modified the holding in *State, ex rel. Wallace*, v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55 [11 O.O.3d 216]. In *Wallace,* the court held that a *non-examining* physician must expressly accept all the findings (but not the opinion drawn therefrom) of an examining physician in order for the non-examining physician's report to support a finding of the Industrial Commission. *Id.* at 59. *Teece* held that physician reports that did not meet this standard were nevertheless admissible as relevant evidence for the limited purpose of testing the credibility and reliability of reports complying with the *Wallace* standard. *Teece, supra*, at 168. Our ruling today has no effect on the *Wallace-Teece* standard because the case at bar involves *examining* physicians.

be relevant to the issue presented, but the commission, as always, is the ultimate arbiter of the credibility and the weight to be given to submitted evidence.

As a result of the *Anderson* standard, this court has been inundated with demands from employees and employers alike for mandamus relief. Rather than being based upon traditionally established concerns,[3] many of the complaints for writs deal entirely with purely evidentiary questions. Under the rubric of "abuse of discretion," the complaints have been predicated upon allegations that certain evidence should not have been considered by the commission. Instead of granting appropriate forms of relief such as requiring the commission to reconsider or to further explain its findings as to a given claim, this court has been placed in the incongruous position of compelling the commission to make a finding of disability and to award relief accordingly—a determination which by Constitution and statute should be vested solely within the discretion of the commission. Section 35, Article II, Ohio Constitution; R.C. 4121.131. In light of such circumstances, we decide today to modify *Anderson* and its progeny.

The extraordinary writ of mandamus will not be issued to interfere with or control the exercise of the Industrial Commission's sound discretion in awarding or denying disability benefits when some evidence in the record supports the commission's finding. In the case at bar, the commission relied upon evidence from doctors who had examined appellant's condition with respect to their particular areas of professional expertise. Each of these doctors expressed an awareness that another allowed condition existed which might have an impact on the commission's ultimate determination of whether appellant was capable of returning to work. Based on the standards set forth above, we hold that the reports of Drs. Turton and Reynolds provide some evidence to support the commission's disallowance of both temporary total and temporary partial disability. Appellant has not demonstrated that the commission abused its discretion or that he has a clear legal right to relief. Therefore, the court of appeals properly denied the issuance of a writ of mandamus.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs in judgment only.

---

[3] See, *e.g., State, ex rel. Martin,* v. *Connor* (1984), 9 Ohio St. 3d 213 (commission exceeding authority); *State, ex rel. Gassmann,* v. *Indus. Comm.* (1975), 41 Ohio St. 2d 64 [70 O.O.2d 157] (commission misinterpreting a statute); *State, ex rel. Holman,* v. *Dayton Press, Inc.* (1984), 11 Ohio St. 3d 66 (commission breaching a duty to consider a claim).

WRIGHT, J., concurs in Parts II, III and V of the concurring opinion of DOUGLAS, J.

CELEBREZZE, C.J., and SWEENEY, J., concur in part, dissent in part and dissent from the judgment.

C. BROWN, J., dissents.

DOUGLAS, J., concurring in judgment only. Because I do not agree with certain portions of the language of the majority opinion and the way in which the opinion interprets previous cases of this court, and because of the nature of one of the dissents herein, I write separately concurring only in the judgment of the majority based solely on the facts of this case.

The temptation to answer Justice Clifford F. Brown's unfair, unfounded and inaccurate attacks on me borders on being overwhelming but, upon reflection, I have determined that answering him might tend to give his nonsense some credibility. This is nothing more than his unprofessional continuing vendetta against me and other justices as exhibited in a number of media forums and in such cases as *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243; *Gries Sports Enterprises, Inc.* v. *Cleveland Browns Football Co.* (1986), 26 Ohio St. 3d 15; *Egan* v. *National Distillers & Chemical Corp.* (1986), 25 Ohio St. 3d 176; and *Middletown* v. *Ferguson* (1986), 25 Ohio St. 3d 71. Thus, it is with much difficulty that I principally confine myself to the real issues in this case — that of the "some evidence" rule versus the "reliable, probative, and substantial evidence" rule, and the propriety of the combined-effect doctrine and its application to cases such as the one at bar.

I

While it is my opinion, for the reasons stated herein, that the case of *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199], is bad law — bad for claimants, employers, the commission, examining physicians and courts and should be changed, until four members of this court decide otherwise, *Anderson* remains the law and must be applied in the instant case.

Even though the combined-effect doctrine, announced in *Anderson,* is portrayed as a pro-worker position, the decision that the appellant-claimant in the case at bar be denied compensation stands despite the application of this doctrine.

The evidence before the commission included the report of appellant's treating physician, Dr. Nicholas B. Pavlatos, and the reports of commission specialists, Dr. H. Tom Reynolds and Dr. Robert L. Turton. Dr. Pavlatos' report reads, under the heading "Present complaints and condition(s)," that appellant "[h]as severe recurrent left hip and left sacroiliac pains with associated depressive neurosis." Without more, Dr. Pavlatos'

report continues with his conclusion that appellant "is unable to return to his regular work of truck driver as he; is unable to bend, lift, stoop, twist and lift heavy items."

Dr. Reynolds' report of October 7, 1983 states, under the heading "Nature of Injury":

"1.) Sacral strain and 2.) Deep contusion to left hip and sacroiliac area and left knee area, depressive neurosis."

After recitation of appellant's medical history, and the results of a physical examination, Dr. Reynolds opined that "* * * I do not feel he could return to his previous level of employment as this required heavy lifting. * * *" Subsequently, Dr. Reynolds reviewed a job description submitted by appellant's employer which stated that appellant was not required to lift heavy objects ninety-seven percent of the time. Pursuant to this review, Dr. Reynolds submitted a supplemental report dated November 29, 1983. In this dictated but unsigned report Dr. Reynolds expressed a change of opinion, concluding that based upon this job description appellant could return to his former employment.

Dr. Turton submitted a report which stated, under the heading "Nature of Injury":

"(1) Sacral strain

"(2) Deep contusion of the left hip and left sacroliac [sic] area and left knee and a depressive neurosis with the latter allowance being made on 06/24/82."

After recitation of appellant's medical history, including the orthopedic conditions and the results of his, Dr. Turton's, psychiatric evaluation, the doctor concluded, "* * * I would place his present degree of impairment in the range of 15-20%. I don't feel that the depression itself limits him from returning and resuming his prior employment performing the same duties and responsibilities. * * *"

The unsigned supplemental report of Dr. Reynolds, dated November 29, 1983, finding this claimant able to return to work, is not evidence upon which the commission could base its decision. See State, ex rel. Smith, v. Indus. Comm. (1986), 26 Ohio St. 3d 128, 129; State, ex rel. Brown, v. Indus. Comm. (1983), 13 Ohio App. 3d 178, 179. Thus, this report must be excluded as evidence.

However, the report of Dr. Turton, prior to expressing an opinion as to the extent of the claimant's disability, describes all of the claimant's allowed conditions and presents significant additional findings relative to the claimant's disability. As such, this report is sufficient to satisfy the Anderson test and constitutes evidence upon which the commission may rely in rendering its decision.

Where some evidence exists upon which the commission may base its factual determination, this determination may not be disturbed by this court. State, ex rel. Allerton, v. Indus. Comm. (1982), 69 Ohio St. 2d 396, 397 [23 O.O.3d 358].

Accordingly, I must concur in the judgment of the majority.

## II

Consideration of the facts in this case reveals the problems inherent in this court's decision in *Anderson.* A careful analysis of *Anderson* has led me to conclude that it is now time for this court to rethink the combined-effect doctrine.

In 1980, this court decided *State, ex rel. Anderson,* v. *Indus. Comm., supra.* In a brief *per curiam* opinion, the court held at 168:

"While it may not always be necessary that the physicians evaluate *every* condition allowed in a claim, we do find that where the issue before the commission is whether a claimant is permanently and totally disabled on account of the combined effect of two or more allowed conditions, medical testimony not evaluating the combined effect of those conditions cannot constitute evidence that the claimant is not permanently and totally disabled. * * *" (Emphasis *sic.*)

This directive was the first in a series of court-imposed limitations which have altered the *commission's* decision-making ability. After *Anderson,* the commission's consideration of medical evidence was limited to those doctors' reports which met the evidentiary requirements of this court, and all other reports, no matter how thorough, cogent or enlightening, were to be ignored.

Nevertheless, upon a facile analysis of the *Anderson* doctrine, the reader may be struck with what appears to be the logic and justness of this holding. As an example, in a "combined-effect" case, the claimant is asserting that although he is not permanently and totally disabled due to an arm injury alone, when that injury is considered *in combination with* his psychological impairment, he is in fact incapable of ever returning to his prior employment. Therefore, it is argued, a medical report wherein a physician merely evaluates the arm injury neither supports nor undermines a disability claim. Accordingly, the argument continues, from an evidentiary standpoint such a report is incomplete and should not be considered by the commission.

The problem with the *Anderson* doctrine, however, lies not with a flaw in logic. What *is* wrong with *Anderson* is that it shifts the determination of the extent of *disability* from the commission to the physician.

Admittedly, it is difficult to resist the first-impression appeal of *Anderson.* This is especially true since there seems to be nothing, *per se,* wrong with having doctors determine the totality of a claimant's disability. However, this court never had the authority to vest doctors with the right to make this determination.

We have recited time and again that it is the duty of the Industrial Commission to decide all questions of fact within its jurisdiction. *State, ex rel. Coen,* v. *Indus. Comm.* (1933), 126 Ohio St. 550, 552; *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190]; *State, ex rel. Reed,* v. *Indus. Comm.* (1965), 2 Ohio St. 2d 200, 202 [31 O.O.2d 408]; *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio

St. 2d 15, 16 [58 O.O.2d 70]; *State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (1975), 42 Ohio St. 2d 278, 282 [71 O.O.2d 255]; *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 169 [22 O.O.3d 400]; *State, ex rel. Griffin,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 264, 265 [24 O.O.3d 348]. Thus, the first issue becomes, what are the factual questions, "within the jurisdiction of the commission," which are to be decided when a worker seeks compensation?

Section 35, Article II, of the Ohio Constitution provides the framework for the creation of a workers' compensation system within this state. The Constitution gives the General Assembly the authority to establish a board which "* * * may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification and to collect, administer and distribute such fund, and *to determine all right of claimants thereto. * * *"* (Emphasis added.)

The constitutional directive that the board "determine all right of claimants" requires that a decision be made on two matters. The first is whether a claimant has the *right* to participate in the fund (allowance or disallowance of the claim). If it is determined, by any proper procedure, that a claimant has the right to participate, then the second responsibility of the commission is to determine *to what extent* such participation should be allowed (extent of claimant's disability). To facilitate the determination of these two matters, lawmakers enacted a statutory provision which allowed the courts to share· the jurisdiction of the board as to the former decision, but which vested *sole* jurisdiction over the latter with the commission.

Thus, orders and findings of the commission which address the claimant's *right to participate* in the Workers' Compensation Fund can be challenged by way of a statutorily provided court appellate procedure. R.C. 4123.519 and its predecessor, G.C. 1465-90, provide for an appeal, on the merits, from a final decision of the commission, to resolve "right to participate" disputes. Pursuant to the current statute, a claimant can appeal from the disallowance of his claim, or the employer can appeal from the commission's allowance of a worker's claim. The court then conducts a *de novo* trial, and a determination is made of the claimant's eligibility to participate in the Workers' Compensation Fund.

Conversely, the determining of the *extent* of participation in the fund is reserved to the commission. That is, if the decision of the commission or the court is to allow the claimant to participate, the claimant returns to the commission for a determination of the amount and duration of benefits. If the claimant or employer is dissatisfied with the decision of the commission as to the extent of disability, an appeal may *not* be taken to

the courts for a *de novo* determination. This is simply because the courts have not been granted jurisdiction to hear such an appeal.[4]

R.C. 4123.519 is very explicit in its terms. In part, it reads:

"The claimant or the employer may appeal a decision of the industrial commission * * * in any injury or occupational disease case, *other than a decision as to the extent of disability,* to the court of common pleas * * *." (Emphasis added.)

In the syllabus of *State, ex rel. Bosch,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 94, this court crystallized the operation of R.C. 4123.519 by holding:

"Once a claimant's right to participate in the Workers' Compensation Fund for an injury to a specific part of the body has been determined, any further determination of the Industrial Commission pertaining to the computation of compensation payable under the workers' compensation law for that specific injury is as to 'extent of disability,' and is not appealable pursuant to R.C. 4123.519." (Citations omitted.)

Additionally, the General Assembly has *expressly* exempted the commission's decisions from the appellate procedure contained within the Administrative Procedure Act. R.C. 119.01(A) states in part:

"* * * Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication * * *."

These enactments lend finality to the commission's factual decisions relating to the rights of claimants under the Workers' Compensation Act. In effect, the jurisdiction of the commission to decide extent of disability is thus, not only exclusive, but conclusive.

Nevertheless, historically, non-appealable decisions of the commission have been accorded review through an action in mandamus. This court stated in *State, ex rel. General Motors Corp.,* v. *Indus. Comm., supra,* at 280:

"* * * [W]here the commission's order constitutes a finding as to the extent of disability, an appeal is unavailable and mandamus is proper to test the commission's exercise of its discretion. * * *"

A proceeding in mandamus, however, is not to be confused with an appeal *de novo.* As this court stated in *State, ex rel. Marshall,* v. *Keller* (1968), 15 Ohio St. 2d 203, 205 [44 O.O.2d 184]:

"* * * Mandamus is not a substitute for an appeal, nor can it be used to create an appeal in cases where an appeal is not provided by law. * * *"

Repeatedly, this court has stated that a writ of mandamus may be

---

[4] In *Jenkins* v. *Keller* (1966), 6 Ohio St. 2d 122 [35 O.O.2d 147], this court noted at 126:

" 'The jurisdiction of the Court of Common Pleas over claims upon the State Insurance Fund * * * is wholly statutory, and is not included within its general jurisdiction. The Courts of Common Pleas do not have inherent jurisdiction in workmen's compensation cases but only such as is bestowed upon them under the provisions of the act.' "

issued only where there has been an abuse of discretion on the part of the commission. As discussed *infra,* such abuse is evident only upon a showing that the commission's decision was rendered without "some evidence" to support it. *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76; *State, ex rel. Teece,* v. *Indus. Comm., supra; State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72, 74; *State, ex rel. Kramer,* v. *Indus. Comm.* (1979), 59 Ohio St. 2d 39, 42 [13 O.O.3d 30].

Recognizing the commission's sole and virtually conclusive discretion in extent-of-disability cases, evidentiary exclusionary doctrines, like that of *Anderson,* limit the opportunity of claimants, as well as employers, to present the widest range of evidence available, in support of their position. Similarly the commission, following *Anderson,* must render its non-appealable decision having weighed less than all of the evidence which it might have deemed to be persuasive. To this extent, the decision-making process is undermined. More significant and detrimental is that the *Anderson* doctrine creates a situation where it is the doctors and *not* the commission who determine the extent of disability of the claimant. *Anderson* requires that the commission *choose* a determination of extent of disability from among those contained in doctors' reports, but only from among those reports which indicate that in some way (any way) they are based on some kind (any kind) of appraisal of all of the claimant's conditions. Rather, we should be allowing the commission to *make* the determination of the extent of disability via a normal fact-finding process, to wit: by collecting, reviewing, weighing and valuating *all* of the evidence presented.

This court's reluctance in *Anderson* to allow the latter process appears to stem from its adoption, by way of reference, of the rationale in *State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55 [11 O.O.3d 216]. In *Wallace,* the commission determined that the claimant was not totally and permanently disabled based upon the opinion of a physician who examined only the claimant's medical *file* as part of the peer review process required of the commission.[5] The conclusion drawn by this physician was based upon consideration of only the "recognized conditions" and was not a product of an assessment of all of the factual findings of the examining physicians such as the claimant's range of motion, degree of pain, etc.

In reversing the court of appeals' judgment upholding the commission, this court reasoned that as long as the commission continued to use non-examining physicians in determining the extent of compensable disability,

---

[5] R.C. 4121.38 reads, in pertinent part:

"(A) The industrial commission shall maintain a medical section under direct commission control to serve both the industrial commission and the bureau of workers' compensation and shall provide for its management.

"(B) The medical section shall:

"* * *

"(3) Develop a method of peer review of medical reports prepared by the commission referral doctors."

"fundamental notions of fairness and evidentiary reliability" require that the basis of such opinions be determinable. This court held that the written opinion of a *non-examining physician* must reflect "that it accepts and is based upon all the factual findings of the physicians who [actually] examined the appellant." *Id.* at 60. Here it needs to be emphasized that in *Wallace* the court was dealing with the report of a physician who *had not*, in any way, actually examined the claimant. In *Anderson,* the court was dealing with physicians who *had* actually examined a claimant for at least a part of the claimant's claimed conditions. The confusion has resulted in the case where a doctor is *both* an examining and a non-examining physician. Such physicians are "examining" with regard to the conditions they observe and consider but are "non-examining" as to other claimed conditions. Thus, mixing the *Wallace* facts with the *Anderson* facts created a measure of confusion.

The holding in *Wallace* does not deal with the evidentiary value of reports by physicians who have actually examined the claimant. Where a claimant is actually examined by a physician, from the standpoint of evidentiary reliability and fairness, the examination itself serves as the validating basis for any opinion rendered by such examining physician. This should be so, even when the examination is conducted by a specialist who renders an opinion based only on his own area of expertise. Consequently, while I agree completely with the *Wallace* decision, the rationale of *Wallace* does not dictate the result reached in *Anderson* where all of the physicians actually examined the claimant. Without violating the letter or spirit of the holding in *Wallace,* each of the four examining physicians in *Anderson* could have rendered a "reliable and fair" opinion based upon the findings of his own examination. Pursuant to its statutory authority, the commission should be (and in *Anderson* should have been) allowed to consider such reports in determining the extent of disability of the claimant.

It must be remembered that the roles of the commission and doctors in determining the outcome of disability compensation claims are decidedly different. It is the physician's task to evaluate the extent of impairment of the claimant. On the other hand, the commission determines, in light of the physician's evaluation *and other evidence,* the extent to which the claimant is thereby disabled. This court recognized these differing roles in *Meeks* v. *Ohio Brass Co.* (1984), 10 Ohio St. 3d 147, 148-149, where the definitions of impairment and disability are set forth as follows:

" ' "Impairment" is a medical term measuring the amount of the claimant's anatomical and/or mental loss of function as a result of the allowed injury/occupational disease. The examining physician evaluates impairment.

" ' "Disability" is a legal term indicating the effect that the medical impairment has on the claimant's ability to work. Disability is determined by the Industrial Commission and its hearing officers.' "

The effect that a given impairment has on a claimant's ability to work

is necessarily dependent upon other factors. For example, this determination could certainly not be made without, at a minimum, a description of a claimant's job duties and working conditions. It is readily apparent, for instance, that a claimant who suffers a forty percent impairment of functioning of his right arm may be totally disabled, or "unable to work," where performance of his job is dependent upon complete functioning of this arm. Conversely, a claimant who suffers eighty percent impairment of his left arm may be entirely capable of performing job duties which require no use of this arm. The case at bar attests to this analysis. As an example (recognizing that the report has been excluded), upon review of the claimant's job description, Dr. Reynolds determined that the claimant was not in fact totally disabled. Notwithstanding his degree of impairment, his lifting duties were within his abilities. The fact that the determination of the claimant's ability to work rests upon the opinions of physicians in this case is the direct result of this court's holding in *Anderson.* More problematic is the fact that physicians, such as Dr. Reynolds, are routinely deciding extent of disability without access to other information which may affect this determination. While this court continues to state that it is the commission which is to determine extent of disability, we have confined the commission to the role of choosing from among doctors' reports, which in effect serves to predetermine the outcome of the worker's claim.

In my opinion, it is time for this court to take a second look at *Anderson* and its progeny. Insofar as these cases allow this court to act as a "super-commission," the safeguards built into the workers' compensation decision-making process may be rendered meaningless. While this court seems to have the power to decide extent-of-disability cases unfettered by statutory restrictions, the commission enjoys no such privilege.

## III

A cry for help comes from the commission itself. In a brief, submitted to this court by the Attorney General of Ohio on behalf of the Industrial Commission of Ohio, in the case of *State, ex rel. Hughes,* v. *Goodyear Tire & Rubber Co.* (1986), 26 Ohio St. 3d 71, the assistant attorney general said, in part:

"The contentions of the counsel for the Appellant display the potentially serious ramifications which have been created by a directive first announced by this Court in *State, ex rel. Anderson,* v. *Industrial Commission* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199]. * * *

"* * *

"Rather than repeating the arguments contra the Appellant's brief * * * *the Respondent-Industrial Commission instead uses this opportunity to respectfully ask the Court to re-examine and reconsider the propriety of the 'combined-effects' doctrine of State, ex rel. Anderson, supra, and its progeny. The Industrial Commission submits that this directive places unreasonable constraints upon * * * [its] intended function, thereby destroying * * * [its] fundamental authorit[y].* [Emphasis added.]

"'* * *

"The Court has now created standards which actually declare what is and what is not evidence that the Industrial Commission can consider in * * * [its] decision-making process. Under this mandate, the totality of a claimant's claim file is to be ignored, for only the 'legally-proper' medical reports can and are to be considered by the commission. The Court's setting of certain restrictive standards which must now be met has removed the judgmental decision-making process, resulting in loss of the Industrial Commission's authorit[y] to *determine* an issue.

"'* * *

"Within its powers, the General Assembly has, pursuant to Article II, Section 35 of the Ohio Constitution, created a board 'to determine all rights of claimants' under the workers' compensation program. The lawmakers have unquestionably recognized that there is to be finality to the Industrial Commission's orders on questions of fact relating to the rights of a claimant under the Workers' Compensation Act. Unlike most other administrative procedures, the decisions of the Industrial Commission are generally not subject to any other body's factual review. Undoubtedly, the General Assembly, in granting the Industrial Commission broad powers, recognizes the expertise which the Industrial Commission and its hearing officers have acquired in this somewhat complex field.

"'* * *

"A court simply cannot and must not substitute its judgment for that of the commission on a factual question and find that the commission abused its discretion. *State, ex rel. Marshall, supra; State, ex rel. Ianiro,* v. *Industrial Commission* (1979), 60 Ohio St. 2d 152 [14 O.O.3d 389]. This is quite unlike that provided to courts under the Administrative Procedure Act. In reaching its own factual determination under Chapter 119, Revised Code, a court has alternatives:

"'* * *

"The legislature has thereunder expressly given the court the authority to substitute its own judgment for that of the administrative agency. *Yet, in workers' compensation matters, such actions are absolutely prohibited. State, ex rel. Bevis,* [v. *Coffinberry* (1949), 151 Ohio St. 293 (39 O.O. 135)]; *State, ex rel. Ianiro, supra.* [Emphasis added.]

"The terms 'reliable,' 'probative,' and 'substantial' as used in Section 119.12, Revised Code, have been defined in the headnotes of *Ohio Real Estate Comm.* v. *Cohen* (1962), 90 O.L.A. 137, 139 [25 O.O.2d 165], Common Pleas Ct., (Muskingham County):

"'* * *

"These terms all involve an element of judgment. Who determines whether the evidence is reliable or true? Who determines the probative effect of evidence of whether it is considered to be substantial? In workers' compensation matters, it is the *Industrial Commission of Ohio* who [*sic*] considers and decides these factors. When subjected to a mandamus action, it is not to be the reviewing court's own perception of the evidence.

'Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding.' * * * [Emphasis *sic*.]

"What may be of significance to the Industrial Commission may not carry much weight with a court. Conversely the common pleas judge or the Court of Appeals or the Supreme Court of Ohio could be greatly impressed with some evidence such as a doctor's report, however[,] the Industrial Commission, through * * * [its] experience and vast exposure, realizes that that report lacks credibility and should be afforded little probative value. In the final analysis, it is the Industrial Commission, not the treating doctor nor a reviewing doctor nor a vocational expert nor the courts, who [*sic*] has been vested by the Ohio Constitution and statutes with the authority to make the factual determinations concerning a claimant's entitlement under the Workers' Compensation Act. See, Sections 4121.13 and 4121.131, Revised Code.

"* * *

"By its very nature, a claimant's entitlement to disability compensation requires a judgmental determination of the facts. Some evidence may merit more weight than other; some expressed opinions can be impeached. This task of fact-finding is to rest with a *board,* not potentially a single common pleas judge before whom an action in mandamus may be brought pursuant to Section 2731.02, Revised Code. That knowledgeable and entrusted *board* is the Industrial Commission of Ohio, whose decisions are to be afforded finality. [Emphasis *sic*.]

"* * *

"Discretion and judgment arise in determinations of whether one is permanently and totally disabled as to the result of an industrial injury or disease. *The 'combined-effects' doctrine of State, ex rel. Anderson, supra, poses significant and serious threats to the Industrial Commission's determinations of a claimant's entitlement.* * * * [Emphasis added.]

"* * *

"Appellant submits that 'his doctors' gave the only reports which have complied with the standards enunciated by this Court in *State, ex rel. Anderson, supra;* * * *

"* * *

"This posture completely eliminates the Industrial Commission's function of being a determinator of the issue, able to weigh and evaluate evidence. * * *

"* * *

"* * * Regardless of specialists' detailed findings concerning a claimant's conditions, the Industrial Commission may be required to declare a claimant entitled to life-long compensation pursuant to Section 4123.58, Revised Code, in the absence of another 'combined-effects' opinion. *The Industrial Commission is foreclosed from giving a medical report the weight and credibility which it deems it is worthy of.* [Emphasis added in part.]

"'* * *

"It should not be unreasonable to expect an examining physician to express opinions within his field of expertise. For example, why must a psychiatrist, if he is going to be willing to be an examiner for the state's workers' compensation system, be forced to report on specialities of medicine outside of his own area of expertise, eg [sic]: orthopedics or neurology or respiratory? A psychologist, trained only in emotional disorders, would never be able to express a 'combined-effects' opinion, for he is not qualified or licensed in medical sciences.

"The recent decisions have given physicians free reign beyond that expected of them. No one doctor is supposed to actually decide whether a claimant is entitled to the compensation provided by Section 4123.58, Revised Code. Yet, that has been sanctioned by the Court. See, *State, ex rel. Thompson, supra:*

"'* * *

"The ultimate effect of the 'combined-effects' doctrine is that only one or two documents contained within even a voluminous claim file can be considered in the determination of permanent total disability. A concept of 'PTD by Default' has been created, whereby the Industrial Commission is bound to accept and affirmatively adopt a certain doctor's own opinion. *The 'combined-effects' rule now requires the Commission to reject evidence which it might find to be highly credible, and instead make a decision based upon evidence that it might find significantly less reliable or credible.* [Emphasis added.]

"Were this issue a consideration for a jury, they, as the fact-finder, would make their determination based upon all of the evidence presented in the courtroom. * * *

"'* * *

"Yet, the Industrial Commission, not presented with testimony made under oath or subject to a cross-examination, is not now entitled to perform a similar function as the fact-finder of the rights of claimants under the Workers' Compensation Act. *Under the line of cases following State, ex rel. Anderson, supra, the Industrial Commission has been specifically ordered and directed to follow and adopt the disability opinions of a particular doctor, disregarding other evidence before it. [It] must do so even if [it] disbelieves the 'testimony.'* This is an infringement of the function afforded by the Constitution and statutes to the Industrial Commission of Ohio. [Emphasis added.]

"'* * *

"*To a degree, the Industrial Commission has been taken from its role as determinator of the issue and made an adverse party to the claimant.* The Court has expanded the 'combined-effects' doctrine to situations where the claimant's own doctor doesn't address both conditions, yet the Industrial Commission's doctor must. *State, ex rel. Norman,* v. *Industrial Commission* (1982), 1 Ohio St. 2d [sic] 263. The Industrial Commission now has a burden greater than that which the claimant himself possesses.

Surely the Court has not intended that the burden of proof actually shift to the Industrial Commission with a claimant's filing of an application for permanent total disability. *The Industrial Commission of Ohio should not now have to attempt to prove that the claimant is not PTD.* [Emphasis added in part.]

"* * *

"Under its authorized duty, the Industrial Commission's ultimate decision on entitlement to permanent-total disability status is not either right or wrong. Instead it is a finding based upon consideration of the issue presented, necessitating a determination of all of the evidence and the element of discretion. To require a decision to be made upon less than all of that contained within a claim file or that orally adduced at a hearing, deprives the Industrial Commission of authorized duties.

"*Wherefore, for these reasons and with utmost respect, the Industrial Commission asks the Court* * * * *to remove the restrictive standards of the 'combined-effects' doctrine pronounced in State, ex rel. Anderson, et [al.]*" (Emphasis added.)

I have quoted at length from the brief because the position I adopt in this concurrence has been so eloquently set forth by the assistant attorney general, and that position could not be better stated. In thinking through this question, those who are opposed to this position should stop and realize that this entire faulty procedure is a two-edged sword that may be used *against* claimants as well as for them. Therein lies the danger. When unfair standards are set, those same standards can be used, with the concurrence of four members of this court, at any time — now or in the future — against the interests of workers with valid claims, as well as against employers.

It should also be noted that the members of the Industrial Commission, who make this plea to us, are appointed by the Governor with the advice and consent of the Ohio Senate. R.C. 4121.02 mandates that "[p]ersons so appointed shall be individuals possessing a recognized expertise in the field of workers' compensation." In effect the Attorney General, through his assistants, and the Governor, through his appointees, are pleading with us to reconsider *Anderson.* In so doing can it reasonably be said that they also are moving, as Justice Brown says, "* * * to disembowel the appellate review of workers' compensation cases for the purpose of frustrating the claimant and favoring employers" or that they are betraying "* * * a long-defended cause, the cause of justice for workers"? Hardly! Can it reasonably be said that all of those persons who hold a view different than Justice Brown's are wrong and only he is right? I refuse to become engulfed in the "us" versus "them" judicial philosophy. Courts — and justices — should support the concept that *all* persons or groups have equal positions before the bar of justice with confidence that their case will be determined not on the basis of *who* they are but rather based on the law and the facts of the case.

It follows, then, that it is time to return to the commission its exclusive jurisdiction to decide extent-of-disability cases subject only to court review for abuse, by the commission, of its discretion.

## IV

It should be remembered that actions in mandamus can and are being filed by *employers* as well as employees. Was this continual contesting by way of litigation ever the legislative intent in establishing the workers' compensation system? I think not!

While they are frocked in different clothing, many of the cases coming to this court, by way of mandamus, involving workers' compensation claims are really claims "as to the extent of disability." Regularly, this court and the Court of Appeals for Franklin County determine cases requesting a larger award for disability or extended benefits. Conversely, numerous mandamus actions are filed in both courts by employers seeking a finding that the injury is not as severe as claimed or a termination of benefits on the basis that the claimant's disability has ended or the benefit period has been improperly extended. These cases clearly involve a claimant's "extent of disability" as opposed to the claimant's "right to participate" in the fund. The obvious import of this to parties who have lost before the commission, be they claimants or employers, is to file a mandamus action in any case involving extent of disability. In short, often the reasoning is — let's sue since we have nothing to lose. It is logical for a losing employer to presume that perhaps a court, which might tend to be more conservative than the Industrial Commission, will terminate a claimant's benefits. From the losing claimant's point of view, the thought process is reversed. Such a claimant hopes to get a more liberal-minded court to reverse the commission and grant extended benefits.

Why has this procedure developed in this way? As previously noted herein, pursuant to R.C. 4123.519, *only* those cases which present the issue of "right to participate" in the fund are proper for appeal, by employers and claimants alike, to the common pleas court. Since a finding as to "the extent of disability" is not appealable, this court, in a number of cases, including *State, ex rel. General Motors Corp.,* v. *Indus. Comm., supra,* has held that, as to this particular finding, mandamus is proper to test the commission's exercise of its discretion.

Pursuant to this policy, for more than fifty years, the "some evidence" rule, although not always referred to by that name, has been recognized as the rule to be applied in determining whether there has been an abuse of discretion by the commission with respect to factual matters. See, *e.g., State, ex rel. Coen,* v. *Indus. Comm., supra; State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm., supra; State, ex rel. Haines,* v. *Indus. Comm., supra; State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128 [58 O.O.2d 319]; *State, ex rel. General Motors Corp.,* v. *Indus. Comm., supra; State, ex rel. Teece,* v. *Indus. Comm., supra; State, ex rel. Questor*

*Corp.,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 240 [24 O.O.3d 334]; *State, ex rel. Griffin,* v. *Indus. Comm., supra; State, ex rel. Scott,* v. *Uniroyal, Inc.* (1986), 25 Ohio St. 3d 35.

We know that "questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding." *Teece, supra,* at 169. See, also, *State, ex rel. Bevis,* v. *Coffinberry* (1949), 151 Ohio St. 293 [39 O.O. 135]; *State, ex rel. Morris,* v. *Indus. Comm.* (1984), 14 Ohio St. 3d 38. We also know that the commission has broad discretion in the performance of its duties, and its actions are presumed to be valid and performed in good faith and sound judgment. *State, ex rel. Gerspacher,* v. *Coffinberry* (1952), 157 Ohio St. 32 [47 O.O. 31], paragraph two of the syllabus. Further, "* * * [w]here a section of the Workmen's Compensation Act will bear two reasonable but opposing interpretations, the one favoring the claimant must be adopted." *State, ex rel. Sayre,* v. *Indus. Comm.* (1969), 17 Ohio St. 2d 57, 62 [46 O.O.2d 297]. Finally, R.C. 4123.95 mandates that the Workers' Compensation Act be liberally construed in *favor of employees* and the dependents of deceased employees. Thus, it is clear that the commission is directed to allow claims when the claimant's position can reasonably be supported. It follows, then, that to establish a standard which is more strict, *i.e.,* "reliable, probative, and substantial" evidence as opposed to "some" evidence, could be far more detrimental to claimants than to employers. The only explanation for Justice Brown's position is that a myopic view of a short-term gain blots out what is really a long-term danger, not to mention the mandates of liberal construction as recited above as well as the fact that the Act does not provide, as do appeals from other administrative agencies, that the standard of review be based upon "reliable, probative, and substantial" evidence.

Not being able, for years, to sell *his* reliable, probative, and substantial evidence doctrine even to Chief Justice Celebrezze and Justice Sweeney, who today now join him in dissent, Justice Brown apparently thought he had finally accomplished his objective when I became a member of the court and joined him, Chief Justice Celebrezze and Justice Sweeney, in the majority in *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc., supra.* In discussing *Thompson* in his dissent, Justice Brown effectively ignores the other language in the syllabus which states that where "* * * there is *no* evidence to the contrary * * *," then "* * * a determination of the commission that the claimant is not permanently and totally disabled is an abuse of discretion * * *." (Emphasis added.) What Justice Brown does not recognize is that in the case at bar *and* in *State, ex rel. Milburn,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 119, and *State, ex rel. Smith,* v. *Indus. Comm., supra,* there was evidence before the commission upon which it could and did base its decision and, as a matter of fact, that evidence was reliable, probative, and substantial. It is elementary, of course, that each case coming before a court is decided on its own facts and that reasonable

minds can differ in interpreting those facts. The fact that such differences are not permitted to exist, without the bringing forth of vengeful invective, is indeed regrettable. Such a posture destroys the designed collegiality of our decision-making process.

This court should not be a "super commission" where we reweigh, in every case, the evidence before the commission and if we can find by any rule or stretch of the imagination that it appears that the claimant's evidence might have more validity than that accorded to it by the commission, then the commission's determination can be reversed. Such a procedure ignores, of course, the time-honored right of the administrative agency to view the parties and the witnesses and to rely on its own experts and vast experience in handling thousands of cases of a like nature. Permitting such a policy to exist would cause further havoc with the system and promote endless litigation.

Decisions that come to us from the commission have a presumption of regularity. Likewise, "[t]his court has often stated that 'the determination of disputed factual situations is within the final jurisdiction of the Industrial Commission, and subject to correction by action in mandamus only upon a showing of abuse of discretion.' * * * Furthermore, where the record contains some evidence which supports the commission's factual findings, those findings will not be disturbed. * * *" (Citations omitted.) *State, ex rel. Allerton,* v. *Indus. Comm., supra,* at 397. All the "some evidence" rule says is that when the evidence before the commission is construed most strongly in favor of supporting the findings of the commission and that evidence reasonably supports those findings, then the commission's decision should be upheld. Only where there is an abuse, by the commission, of its discretion will its decision be reversed by issuing the extraordinary writ of mandamus.

## V

The question then becomes, when does an abuse of discretion exist?

On numerous occasions, this court has stated that an abuse of discretion justifying the issuance of the extraordinary writ of mandamus will exist only where there is *no* evidence of record upon which the commission could have based its factual conclusion concerning the grant or denial of workers' compensation benefits. *State, ex rel. Braswell,* v. *Indus. Comm.* (1986), 25 Ohio St. 3d 76; *State, et rel. Thompson,* v. *Fenix & Scisson, Inc., supra; State, ex rel. Teece,* v. *Indus. Comm., supra; State, ex rel. Paragon,* v. *Indus. Comm., supra,* at 74; *State, ex rel. Kramer,* v. *Indus. Comm., supra,* at 42. Thus, it is clear, as a corollary, that where there is evidence — *some* evidence — before the commission to support its findings, the decision of the commission will not be disturbed since there is no abuse of discretion.

In attempting to now change the rule, the additional tests applied by this court for "abuse of discretion" must be confronted. As recently as

February 26, 1986, this court, in *State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster* (1986), 22 Ohio St. 3d 191, at 193, a case in which, interestingly enough, Justice Brown concurred, stated:

"For this court to grant a writ of mandamus with respect to a decision by the Industrial Commission, it is incumbent upon the relator to demonstrate that the commission committed an abuse of discretion. *State, ex rel. Morris, v. Indus. Comm.* (1984), 14 Ohio St. 3d 38. An abuse of discretion *'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'* * * *" (Emphasis added.)

In the case at bar and in *Milburn, supra,* and *Smith, supra,* there is clear evidence which supports the decisions of the commission. Even if that evidence does not rise to the new proposed standard, nevertheless there is no indication that the commission acted out of prejudice, passion, moral delinquency or with any perversity of will. If it is now the intent to also change this standard, then we should just do away with the commission, save all involved a great deal of time and expense and have this court weigh the evidence in every case, even though each of us has very limited expertise on the medical issues involved, has not had the opportunity to see the witnesses or view their demeanor, nor has any of us had the extensive experience possessed by the members of the commission who handle literally thousands of such claims and who are in the position to consider the entire record before them, not *just* medical reports.

## VI

It is not unusual for judges to disagree in cases involving differing fact patterns. To take the position, as Justice Brown has done herein, that I have "* * * provided the fourth vote necessary to solidify the new majority of four needed to accomplish the unholy mission of stifling and slowing the progress this state has made toward justice for our workers," because I have disagreed with him, based upon the facts, in three cases, is patent nonsense.

Since I have been a member of this court, there have been fifty-four merit cases decided by four to three votes. In thirty-six of those fifty-four cases, I have been in the majority. Of the fifty-four cases, eleven have been workers' compensation cases. I have joined Justice Brown, Chief Justice Celebrezze and Justice Sweeney in nine of the eleven cases to make a majority of four including, as recently as August 13, 1986, *State, ex rel. Jeffrey, v. Indus. Comm.* (1986), 26 Ohio St. 3d 3. In none of those cases was I ever accused by Justice Brown of betraying "* * * the cause of justice for workers." Could it be because I was voting "right" in those cases, according to him, but when I see the facts and law in a given case differently than does he, then I am against the "working person"? Has this court really been reduced to the level of constant personal attack on justices by other justices who may disagree on any given case?

A judicial opinion is no place to attack another judge or to defend

oneself from attack. Considering this, I am reluctant to respond to Justice Brown's comments except to say that those comments are unparalleled, unprecedented and worse — untrue, and I unequivocally deny his distorted allegations. When judges, on a given case, cannot disagree agreeably, such a situation is sad for the bench, bar, litigants and the people of Ohio. Fortunately, time and attrition will mercifully help solve the problem.

WRIGHT, J., concurring. I concur in the substantive legal points asserted in Parts II, III and V of Justice Douglas' concurring opinion herein.

CELEBREZZE, C.J., concurring in part, dissenting in part and dissenting from the judgment. I certainly agree with the plurality's statement that the writ of mandamus should not issue from this court in the absence of a showing by the relator that he has a clear legal right to the relief which the Industrial Commission is under a clear legal duty to provide. Likewise, I concur in the plurality's emphasis of our obligation to construe the workers' compensation laws in a remedial manner. Finally, I concur in the plurality's reaffirmance at fn. 2 of the continuing validity of this court's holding in *State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55 [11 O.O.3d 216], which requires non-examining physicians to expressly accept the factual findings of the examining physician when preparing a medical report.

I cannot, however, sanction the attempted overhaul of established workers' compensation law regarding Industrial Commission determinations of disability which has in large measure recently been undertaken by this court.[6]

---

[6] Among the radical changes in workers' compensation law championed by recent plurality opinions of this court are the following:

The Industrial Commission's order need no longer state with specificity the medical reports or other evidence on which it has relied in reaching its determination on disability, nor need it specify the reasons for its determination. Rather, the mechanical incantation "based on the evidence in the file, and the evidence adduced at the hearing" will suffice. See *State, ex rel. Smith,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 128.

The court may now search the file for evidence in support of the commission's order should the commission's basis, if stated, somehow fail to otherwise withstand scrutiny. See *Smith, supra; State, ex rel. Milburn,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 119, attempting to undermine *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481.

The commission abuses its discretion only where the record is devoid of "some evidence" supporting its order. "Some evidence" is *any* evidence, no matter how minimal in quantity nor how deficient or unreliable in quality. See *Milburn, supra,* attempting to overrule *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76, and its progeny.

It is my view that the distorted "some evidence" rule applied in recent cases by members of this court is meaningless jargon employed to justify that which is unjust. See *State, ex rel. Smith,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 128, 130-134 (Celebrezze, C.J., concurring in part and dissenting in part).

In case the current attempt to nullify *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62

In part, that unfortunate trend continues in the instant case, where a plurality presses its assault on this court's decision in *State, ex rel. Anderson, v. Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199]. Although reports of *Anderson's* demise are at this time premature,[7] by all indications there are some who eagerly await the day on which they can jointly preside at its wake.

In this haste to rewrite workers' compensation law by way of judicial edict, the basic and laudable purpose of our holding in *Anderson* has been overlooked. The straightforward purpose of that decision is to ensure that, in combined-effect claims, there be medical evidence which evaluates the total impairment resulting from the effect of two or more allowed conditions before the commission can reasonably make an informed determination of a claimant's disability. The necessity of such a medical finding of impairment in combined-effect cases should be beyond question and is a prerequisite to an accurate administrative determination concerning disability.

Today's plurality objects to the view that medical reports not evaluating the combined effect of allowed conditions cannot alone be an evidentiary basis for a commission disability order. While a fine tuning of the *Anderson* decision could address the crux of the plurality's legitimate concern (by allowing the commission to consider these reports as record evidence so long as there is also record evidence evaluating combined-effect impairment), the plurality attempts simply to dispense with *Anderson* by turning a deaf ear to the very real problem sought to be addressed by that case. Instead of a workable solution, a new rule is proposed which is potentially dangerous and immediately unjust to all parties before the Industrial Commission.

It is claimed in today's *per curiam* opinion that, in combined-effect cases, the commission may make its disability finding based on a series of medical reports, each of which evaluates the claimant's impairment with regard to only one of the claimant's concurrently allowed conditions but

---

Ohio St. 2d 166 [16 O.O.3d 199], is not quite enough for the bench and bar of this state to digest, a faction of this court has added further to the chaos.

This group just concurred, without qualification, in this court's decision in *State, ex rel. Rhodeback, v. Johnstown Mfg., Inc.* (1986), 26 Ohio St. 3d 115. In *Rhodeback* this court explicitly followed the full import of our holding in *Anderson* by rejecting commission medical reports in which the physicians did not evaluate the combined effect of the claimant's physical and psychiatric conditions. While agreeing in *Rhodeback* that the commission had abused its discretion by admitting these reports, this group today indicates its desire to abolish, for all practical purposes, the *Anderson* and now *Rhodeback* decisions with regard to disability determinations in combined-effect claims.

[7] Because today's ruling and the ruling in *State, ex rel. Hughes, v. Goodyear Tire & Rubber Co.* (1986), 26 Ohio St. 3d 71, are plurality decisions, neither opinion represents the binding law of this state, *e.g., Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St. 3d 42, 44, and both are best viewed as unfortunate aberrations.

none of which evaluates their combined effect. By way of illustration, consider a claimant who suffers from both physical and mental allowable conditions. Doctor "A," whose expertise and examination concern the physical condition, has made factual findings and rendered an impairment appraisal relative only to the worker's physical condition. Similarly, Doctor "B," the worker's examining psychiatrist, has estimated the psychiatric impairment alone. If today's *per curiam* opinion reflected the law of this state, there would not be a need for any medical evaluation of the totality of the claimant's impairment based on the *combined effect* of these two allowed conditions. Instead, the plurality evidently feels the commission's administrative staff should somehow interpret and combine these separate medical impairment findings in reaching a determination of disability, without need of a combined-effect analysis by a medical expert. I do not share that view.

I am fully cognizant of the state's highly trained and knowledgeable administrative staff involved in the determination of disability claims. However, just as staff hearing officers (and judges) are not qualified to render medical diagnosis or treatment under the laws of this state,[8] so too are they equally unqualified to render competent medical advice concerning the combined effect of multiple impairments. This is because the rendering of a medical opinion concerning the degree of impairment resulting from the combined effect of two or more concurrently allowed conditions is not a simple problem of addition or subtraction. If that were the case, parties would be seeking such expert medical advice from accountants rather than physicians. A ten percent degree of impairment resulting from a physical condition, taken together with a ten percent degree of impairment resulting from a psychiatric or other physical condition, may combine to produce a total degree of impairment that is quantitatively different from twenty percent. The crucial reality, which is simplistically overlooked, is that such a professional judgment of impairment begs for a medical expert, not a mathematician.

Those participants in the disability determination process who are not opining physicians are entirely ill-suited to make an informed medical assessment of impairment in the first instance. The administrative role in the complex process of determining disability, as designed by the General Assembly, must necessarily rely on expert medical facts and opinions. It is, of course, sheer folly to suggest that lay persons should be charged with the awesome responsibility of determining disability in combined-effect cases without benefit of at least one medical report[9] which evaluates the

---

[8] R.C. 4731.41 forbids the practice of medicine by any person not licensed by the State Medical Board.

[9] Such medical reports, evaluating combined-effect impairment, could be prepared either by the commission's staff physicians, the attending physician, or by independent medical experts, or any combination of such experts.

total extent of impairment resulting from the *interaction* of the allowed conditions. As we have often repeated, the physician alone properly determines impairment. The commission and its hearing officers then make the legal determination of disability by considering the effect that the claimant's impairment has on his ability to work. Thus, if the commission were to invade the province of the medical expert in this delicately balanced system, it would constitute an abuse of discretion. See, *e.g., State, ex rel. Dallas,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 193, 194; *State, ex rel. Walters,* v. *Indus. Comm.* (1985), 20 Ohio St. 3d 71, 74, at fn. 3.

What we sought to recognize in *Anderson,* and what remains true today, is that a medical evaluation of impairment because of the combined effect of two or more allowed conditions is virtually always an *essential* predicate to a sustainable determination of disability by the Industrial Commission.[10] For us to require any less would be a perversion of the law of Ohio by her highest court.

An examination of the instant scenario demonstrates a persistent effort to alter radically this fundamentally fair hearing process. In this case, Dr. H. Tom Reynolds evaluated only the impairment resulting from the claimant's physical condition. Dr. Robert L. Turton estimated the impairment relating solely to the claimant's psychiatric condition. There was no expert medical opinion in the commission's record which evaluated the combined impairment of both these allowed conditions. By approving the commission's order, the plurality in essence would rest with the commission's hearing officers the authority to make *both* the medical combined-effect-impairment finding and the subsequent disability determination which is necessarily based in part on the impairment finding. While those who complacently concur in today's judgment may charge that this court has allowed physicians to usurp the commission's function, a contention to which I do not subscribe, it is obvious that under the scheme advanced today the commission's hearing officers could usurp the physician's function. I trust, however, that such an invitation will be declined.

If clarification or temperance of the exclusionary effect of *Anderson* is appropriate, this court should, at a minimum, require the commission to determine disability based, at least in part, on medical evidence concerning the degree of total impairment resulting from the combined effect of the allowed conditions. Otherwise, there will not be sufficient "* * * evidence upon which the commission's finding might *properly* rest * * *." (Emphasis added.) *State, ex rel. Stuber,* v. *Indus. Comm.* (1933), 127 Ohio St. 325, 329.

---

[10] Further, and consistent with our holdings in *State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55 [11 O.O. 3d 216], and *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165 [22 O.O.3d 400], if the physician conducting the combined-effect impairment evaluation has not actually examined the claimant for all the allowed conditions, he must expressly accept the factual findings of those physicians who did examine the claimant when rendering an opinion as to the other allowed conditions.

The framers of this state's great Constitution exhibited both wisdom and foresight by vesting the power to consider extraordinary writs in this state's appellate courts.[11] Our constitutional mandate in workers' compensation cases includes the judicial duty to ascertain whether there is a "* * * factual basis for the exercise of the commission's discretion * * *." *State, ex rel. Powhatan Mining Co., v. Blake* (1944), 143 Ohio St. 227, 231 [28 O.O. 142]. This charge is undermined by the plurality's position, which virtually invites an unrestrained abuse of discretion by sanctioning an inherently flawed process in which administrative determinations of disability are made without any medically reliable evidentiary basis evaluating the total impairment in combined-effect cases.

For the foregoing reasons, I respectfully concur in part, dissent in part, and dissent from the judgment.

SWEENEY, J., concurs in the foregoing opinion.

CLIFFORD F. BROWN, J., dissenting. In its continuing scheme to completely gut the workers' compensation system in Ohio, today's plurality lowers its sights on previous rulings from this court which sought to ensure that the system functions fairly, equitably and responsibly. Today's plurality decision attempts to destroy the viability of two of the best workers' compensation holdings to emanate from this court in recent years: *State, ex rel. Anderson, v. Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199], and *State, ex rel. Thompson, v. Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76.

In *Anderson,* we held that "where the issue before the commission is whether a claimant is permanently and totally disabled on account of the combined effect of two or more allowed conditions, medical testimony not evaluating the combined effect of those conditions cannot constitute evidence that the claimant is not permanently and totally disabled." *Id.* at 168. The logic and justice of this holding are indisputable. If the claimant alleges that he is permanently and totally disabled as a result of the *combination* of two or more allowed conditions, a medical report evaluating fewer than all those conditions is simply not probative on the question of whether the claimant is in fact permanently and totally disabled. Our holding in *Anderson* merely requires the commission to discount evidence which is not germane to the issue at hand.

Under the guise of "modifying" *Anderson,* today's plurality actually is

---

[11] Sections 2(B)(1) and 3(B)(1) of Article IV of the Constitution; see, *e.g., State, ex rel. Pressley, v. Indus. Comm.* (1967), 11 Ohio St. 2d 141 [40 O.O.2d 141], paragraph one of the syllabus.

In paragraph seven of the *Pressley* syllabus, this court wisely explained that "* * * in considering the allowance or denial of the writ of mandamus on the merits, [the court] will *exercise sound,* legal and judicial *discretion based upon all the facts and circumstances* in the individual case *and the justice to be done."* (Emphasis added.)

attempting to repudiate and overrule it totally.[12] Now, the commission is free to seize on any report, no matter how unreliable or nonprobative, to "support" its decision, regardless of whether the report is actually relevant to the issue of combined effect and the extent of disability. As a result, the Industrial Commission's orders and awards in such cases will be, practically speaking, virtually unreviewable. Today's plurality has taken one more step toward its goal: to disembowel the appellate review of workers' compensation cases for the purpose of frustrating the claimant and favoring employers.

The next martyr in the plurality's war against justice for workers is *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76. In *Thompson,* this court held that:

"Where the record before the Industrial Commission contains reliable, probative, and substantial evidence in accordance with the law to support a factual finding and determination that a claimant is permanently and totally disabled, and there is no evidence to the contrary which meets such standards, a determination of the commission that the claimant is not permanently and totally disabled is an abuse of discretion by the commission for which the claimant will be afforded relief in an action in mandamus." *Id.* at syllabus.

The reasonableness and justice of this holding are self-evident. It simply states that where the record contains ample, legally acceptable evidence supporting the claimant's position, and no such evidence to the contrary, the commission abuses its discretion when it finds against the claimant. But today's plurality apparently is convinced that this ruling requiring the commission to issue just, fair and equitable orders places too heavy a burden on that body, and may actually require it to find for the claimant in some cases. Thus, *Thompson,* like *Anderson,* is "modified," which in this case means "overruled."

I also reject the plurality's arrant use of the much-maligned "some evidence" language. I have repeatedly expressed my abhorrence of this nonstandard, on the basis that it is constantly twisted and abused in an effort to uphold any order of the Industrial Commission, no matter how insupportable, unjust, or nonsensical. Too often this senseless "rule" is construed to mean that the order of the commission must be upheld even if it is supported by only a scintilla of non-evidence.

I will not hestitate to point out the strange phenomenon represented

---

[12] It is interesting to note that Justice Douglas expends considerable effort explaining his extreme dislike of *Anderson,* and yet he refuses to join the plurality in overruling it, for reasons clear only to himself. Were he to join in overruling that decision, which would be the only course of action consistent with his apparent abhorrence for it, he may be perceived as anti-labor — an uncomfortable prospect. Yet, if he were to uphold *Anderson,* his popularity among businesses and employers might be jeopardized. His solution lies before you: a lengthy, opaque "concurrence in judgment only" in which he painstakingly divorces himself from the consequences of actually taking a position on the case.

by today's decision, along with two other cases decided recently: *State, ex rel. Milburn,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 119, and *State, ex rel. Smith,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 128. This trio of decisions attempts to deal a heavy blow to the claimant in the workers' compensation area. Their existence is directly chargeable to Justice Douglas.

Until this sudden and unexplained judicial swerve to the right, Justice Douglas had demonstrated a laudable disposition to champion vigorously the cause of equal justice for the working person while recognizing the rights and interests of employers. One example of what must now be called his previous stance is *State, ex rel. Horne,* v. *Great Lakes Construction Co.* (1985), 18 Ohio St. 3d 79, in which Justice Douglas joined in a salutary opinion holding that a claimant is temporarily and totally disabled as long as his work-related injury keeps him from returning to his former position of employment, meaning the position he held when he was injured. The reader of today's decision will further be surprised to learn that Justice Douglas also joined in *Thompson, supra,* another laudable and just decision, which he is now helping to destroy.[13]

Further evidence of Justice Douglas' ambivalence and inconsistency with regard to workers' rights may be found in *State, ex rel. Walters,* v. *Indus. Comm.* (1985), 20 Ohio St. 3d 71. In *Walters,* we held that "[m]andamus will issue where the record contains *reliable, probative, and substantial* evidence supporting a claim for permanent total disability benefits and the decision of the Industrial Commission to the contrary is based solely on a medical report where the recording physician, during a later deposition, equivocates or contradicts his opinion concerning the extent of disability." (Emphasis added.) *Id.* at syllabus. Justice Douglas concurred in *Walters;* Justices Locher, Holmes and Wright, with whom Justice Douglas joins today in judgment, dissented. Thus, less than a year ago, Justice Douglas provided the fourth vote necessary to decide a case adopting the "reliable, probative, and substantial evidence" standard which ensures that the commission acts responsibly and fairly. In *Smith* and *Milburn,* Justice Douglas, in a complete judicial change of direction, provided the fourth vote necessary to solidify the new majority of four needed to accomplish the unholy mission of stifling and slowing the pro-

---

[13] In *Thompson, supra,* we articulated a clear, good and easily understood evidentiary standard for the Industrial Commission in evaluating disability claims, as set forth in the syllabus quoted, *supra,* in the body of this dissenting opinion. Justice Douglas was one of the four justices concurring in that opinion and syllabus, which now he unequivocally rejects by joining in the present case. This mandamus standard of "reliable, probative and substantial evidence" for testing the validity of disability orders by the Industrial Commission harmonizes with the law concerning the statutory standard and scope of review for testing the validity of administrative agency determinations in other areas, as provided in R.C. 119.12, 3745.06, 3734.05(C)(7), 4112.05(E), 4112.06(E), 4112.061(A), and 4141.26(B). This sound and stable standard of review should not be scrapped for something as malleable, spongy and elusive as the "some evidence" standardless standard.

gress this state has made toward justice for our workers. By his refusal today to adhere to his previous stance of protecting our work force and advancing the cause of equal justice for workers, Justice Douglas has signalled the end of the enlightened path this court has taken in recent years. This course of conduct provides a startling illustration of judicial betrayal of a long-defended cause, the cause of justice for workers.

The most recent defense of this now-relinquished cause appears in a case decided shortly before this case today. In *Egan* v. *National Distillers & Chemical Corp.* (1986), 25 Ohio St. 3d 176, 188-190, Justice Douglas, in a separate opinion concurring in judgment only, waxed eloquent on his own (now abandoned) devotion to "fundamental fairness" in the area of workers' compensation. This dedication to the cause of fairness and equity has today been jettisoned.

Accordingly, I would reverse the court of appeals and grant the writ reinstating the payment of temporary total disability compensation to appellant.