OPINION
{¶ 1} Melinda Provost filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation and which compels the commission to enter a new order granting the compensation.
{¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. (Attached as Exhibit A.) The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we refuse to grant the requested relief.
{¶ 3} Counsel for Ms. Provost has filed objections to the magistrate's decision. Counsel for the commission and counsel for Doctors Hospital, which employed Ms. Provost at the time of her injuries, have each filed a memorandum in response. The case is now before the court for a full, independent review.
{¶ 4} Ms. Provost was injured in September 1990. Her claim was initially recognized for lumbosacral strain/sprain, disc derangement, instability of L4-5, and severe depression.
{¶ 5} Ms. Provost was seen several times by Stephen J. Voto, M.D. The examinations were done at the request of Doctors Hospital and its counsel. In 1998, Dr. Voto reported Ms. Provost to have reached maximum medical improvement ("MMI"). In 1999, she was found to have reached MMI, and her TTD was terminated.
{¶ 6} Later, Ms. Provost's claim was recognized for arachnoiditis, following which Ms. Provost filed a motion requesting renewed TTD compensation.
{¶ 7} Ms. Provost was then examined by Dr. Voto again, and Dr. Voto found that Ms. Provost was still in a condition of MMI, regardless of the arachnoiditis. As a result, the commission refused to renew TTD compensation.
{¶ 8} In February 2001, Ms. Provost filed another motion requesting TTD compensation. A month later, she sought payment for treatment she was receiving from Stephen Watson, M.D. A district hearing officer denied the TTD compensation but approved payment to Dr. Watson. The district hearing officer's order was affirmed by a staff hearing officer and the commission refused an additional appeal.
{¶ 9} Counsel for Ms. Provost argues that Ms. Provost does not suffer from a flare-up of her back problems, but suffers from a progressive degeneration of her back problem which necessitates a renewed payment of TTD compensation. Counsel notes Dr. Watson's treatment of radio frequency denervation for arachnoiditis and argues that a finding that such treatment is necessary is inconsistent with finding Ms. Provost to be MMI.
{¶ 10} Counsel for Doctors Hopsital and counsel for the commission argue that the old back problems had stabilized and the arachnoiditis caused by the scarring resulting from back surgeries was a stable condition. Thus, all her conditions taken together were on a stable plateau such that a finding of MMI was appropriate.
{¶ 11} We cannot say, based on the medical evidence before us, that Ms. Provost's condition is changing such that a finding of MMI is unsupported by the evidence. We acknowledge that Ms. Provost's condition is periodically disabling, but cannot say that her condition as a whole is in a state of flux. Hence, we cannot say a writ of mandamus forcing the reinstatement of TTD compensation should be issued.
{¶ 12} We overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the request for a writ of mandamus.
Objections overruled; writ denied.
LAZARUS and BROWN, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, Melinda Provost, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for temporary total disability ("TTD") and to issue an order granting the requested compensation.
Findings of Fact:
In September 1990, Melinda Provost ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed for lumbosacral sprain/strain, disc derangement, instability at L4-5, and severe depression.
In March 1999, TTD compensation was terminated because the allowed conditions had reached maximum medical improvement ("MMI"). On appeal, a staff hearing officer noted a dispute regarding treatments but stated that the issue was not before the commission at that time.
In May 1999, John Cocumelli, D.O., reported:
As you are well aware Ms. Provost has a long history of back problems including internal disc derangement and lumbosacral instability for which she has undergone several surgeries. Unfortunately she has not had sustained relief with any of the procedures or any of the rehabilitative processes that she has undertaken. As you can see from the recent MRI report she also has developed arachnoid scarring causing arachnoiditis. This is not unusual in situations like this with multiple back surgeries.
I do believe that this should be an additional diagnosis allowed in her particular situation. I also believe that it is certainly reasonable to consider the additional therapy that Dr. Rothstein has outlined to help improve this patient[']s function and decrease her pain level.
She currently is on chronic analgesic therapy in order for her to function on a day to day basis. Hopefully with effective therapy with Dr. Rothstein, her dependence on these medications can be decreased.
In August 1999, the commission allowed arachnoiditis in the claim, noting as follows:
Temporary total compensation for this condition may be considered by the self-insured employer upon submission of proof supportive of temporary total disability as it relates to "arachnoiditis".
In December 1999, claimant filed a motion for TTD compensation supported by a C-84 report of September 28, 1999, in which Dr. Cocumelli stated that, from April 15, 1997 to the present, claimant was prevented from returning to work by "846.0 LSSS" (lumbosacral sprain/strain) and "322.9 arachnoiditis."
In January 2000, claimant was examined by Stephen Voto, M.D., who found a full range of motion of the lumbar spine. Claimant's gait was not antalgic, and the straight-leg test was negative. There was no evidence of neurologic problems. Claimant appeared to be extremely comfortable and in good spirits, and said she was enjoying one of her better days. However, she reported chronic pain in the lower lumbar area. Dr. Voto felt that all the allowed conditions in the claim, together, caused claimant to be unable to return to her job as a registered nurse at that time, but he stated that claimant's inability to work was not caused by arachnoiditis in and of itself. Further, he found that all the allowed conditions had reached MMI, including arachnoiditis. Dr. Voto opined that chronic use of anti-inflammatories would provide analgesic effect, with occasional use of pain medication. However, Dr. Voto felt that the therapy outlined by Dr. Rothstein would not change claimant's status of MMI.
In February 2000, a district hearing officer denied TTD compensation:
The claimant's request for temporary total compensation from 03/08/1999 forward, is specifically denied. The claimant has not proved by a preponderance of the evidence that the allowed conditions in this claim have once again rendered the claimant temporarily and totally disabled. It is noted that claimant was found to have reached maximum medical improvement pursuant to the SHO order of 03/08/1999. Since that date Claim No. L55772-22 was additionally allowed on 08/16/1999 for the condition of "arachnoiditis." Claimant argues that this addi-tionally recognized condition once again renders the claimant temporarily and totally disabled. District Hearing Officer does not find the claimant's argument in this case to be persuasive. District Hearing Officer notes that none of the C-84 motions filed in support of the claimant's request for temporary total compensation contain any objective or subjective physical findings. Without these findings, it is medically unclear to this Hearing Officer how the newly allowed condition causes a new period of disability. In addition, the District Hearing Officer is not persuaded by the claimant's argument that Dr. Voto's report of 01/27/2000 supports a finding that the claimant has not reached maximum medical improvement. Paragraph number (5) of said report clearly indicates that the claimant has reached maximum medical improvement.
In April 2000, a staff hearing officer affirmed. The commission refused further appeal.
In February 2001, claimant filed a motion for TTD beginning on October 10, 2000, with C-84 forms from Stephen Watson, M.D. On October 31, 2000, Dr. Watson stated TTD was caused by lumbar strain/sprain, internal disk derangement, and arachnoiditis. On December 12, 2000, he stated that the cause was "724.4," which, under the ICD-9 codes, is "[t]horacic or lumbosacral neuritis or radiculitis, unspecified." Claimant also filed Dr. Watson's office notes.
In March 2001, claimant moved for payment of Dr. Watson's treatments.
In June 2001, a district hearing officer denied TTD compensation but approved payment for treatments:
Authorization is granted for payment of Dr. Watson's fee bill of 04/16/2001 and authorization is granted for one treatment of radio frequency denervation up to ten levels.
The District Hearing Officer finds that these treatments are medically necessary and are appropriate for the allowed conditions in this claim. This finding is based on Dr. Watson's report of 02/12/2001.
Temporary total disability compensation is denied from 10/24/2000 through 03/25/2001. The District Hearing Officer notes the claimant was found to be at maximum medical improvement as of 03/08/1999 pursuant to IC order of 04/03/2000. The District Hearing Officer finds the medical evidence in file fails to justify the reinstatement of temporary total disability compensation. There is no medical evidence that the injured worker's underlying physical condition or status changed to any extent that would warrant the payment of temporary disability benefits again. The injured worker under-went a series of injections during the requested period. According to Dr. Watson's treatment notes (01/03/2001 through 03/12/2001) and his report of 02/12/2001 the claimant was offered some temporary symptomatic relief from chronic conditions, but there is no evidence the claimant's underlying condition changed to the extent it became once again temporarily disabling.
In July 2001, a staff hearing officer affirmed:
Temporary total compensation from 06/20/2000 through 03/25/2001 is denied. The claimant was found to have reached maximum medical improvement by orde[r] of 04/03/2000. The medical evidence does not show that the underlying physical condition and status changed to any extent that would justify the payment of further temporary total compensation. The claimant again underwent a series of injections during the requested period. According to Dr. Watson's treatment notes (01/03/2001 through 03/12/2001) and his report of 02/12/2001, the claimant received only temporary symptomatic relief from chronic condi-tions. There is no evidence the underlying condition changed to the extent it once again become disabling.
Per the 04/16/2001 C-84 from Dr. Watson, the claimant returned to work on 03/26/2001.
Claimant appealed to the commission, providing inter alia an affidavit regarding the efficacy of Dr. Watson's treatments.
In August 2001, the commission refused the appeal.
Conclusions of Law:
In this action, claimant contends that the commission abused its discretion in denying reinstatement of TTD compensation. The magistrate disagrees
It is well established that, when the commission finds that a claimant has reached MMI following an industrial injury, the commission must terminate TTD. State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630; State ex rel. Rouch v. Eagle Tool Machine Co. (1986), 26 Ohio St.3d 197; State ex rel. Bayse v. Indus. Comm. (1992),64 Ohio St.3d 68.
The Ohio Supreme Court has held, however, that termination of temporary total compensation does not prevent a subsequent award of compensation if circumstances change and the claimant experiences a flare-up of his condition that temporarily and totally disables him. State ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424 (relying on commission's continuing jurisdiction under R.C. 4123.52 to modify decisions when there is a change of circumstances); State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 267 (concluding that, where TTD was terminated due to a return to work, a relapse can warrant an additional period of TTD).
Accordingly, once TTD compensation has been terminated, it cannot be reinstated unless there is a change in circumstances such as a flare-up or relapse of the allowed condition that causes an additional period of TTD. Both Bing and Navistar require that claimant must demonstrate a change in his functional ability that results in a total and temporary inability to return to his former employment.
Depending on the circumstances, the allowance of a new condition may support a reinstatement of compensation. When a claimant develops a new condition that, in and of itself, results in a loss of functional capacity to return to work, causing a new period of TTD, the commission may reinstate compensation if claimant meets the usual requirements of TTD. See, generally, Basye, supra.
Here, in the August 1999 order allowing arachnoiditis, the commission stated that TTD "for this condition" may be considered on submission of proof supportive of TTD as it relates to "arachnoiditis." This statement correctly reflected the applicable law. If claimant submitted medical evidence of TTD caused by the newly allowed condition, the commission could award compensation. Contrary to claimant's assertion, the order did not mandate a resumption of TTD upon filing of a doctor's certification.
Here, claimant's medical evidence was insufficient as a matter of law. The C-84 of September 1999 was based in part on lumbosacral sprain/strain, which had reached MMI and could not support an award of TTD compensation unless claimant established a Bing relapse of the lumbosacral sprain/strain.
Likewise, in October 2000, Dr. Watson reported that TTD was caused by lumbar strain/sprain, internal disk derangement, and arachnoiditis. The C-84 of December 2000 stated that a return to work was prevented by an unspecified thoracic or lumbosacral neuritis or radiculitis. Once again, the report did not establish that TTD was caused by the newly allowed condition, as opposed to conditions that had reached MMI. In sum, claimant failed to provide medical evidence that TTD was caused by the newly allowed condition in and of itself without regard to conditions upon which TTD could not be based.
The magistrate concludes that claimant has not met her burden in mandamus and recommends that the court deny the requested writ of mandamus.